## Schuster, Appellant, v. Largman et al.

Argued January 15, 1935. Before SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Joseph R. Embery,* with him *Howard I. James,* for appellant.

*Isaac J. Vanartsdalen,* with him *Edward G. Biester* and *Louis E. Levinthal,* for appellees.

OPINION BY MR. JUSTICE MAXEY, March 25, 1935:

The plaintiff, Otto Max Schuster, was employed by the Largman, Gray Company (a corporation), from 1920 to March 6, 1931, when he was discharged. Alleging the discharge to be a breach of contract, plaintiff brought this action in assumpsit to recover damages against Largman, Gray Company, and Harry Largman and Joseph Largman, the majority stockholders of the company. He bases his claim upon three agreements: (1) a contract (Exhibit "A") made in 1919 between the Largmans, Wilfred Gray, and himself, *providing for the incorporation of the corporate defendant;* (2) a contract (Exhibit "B") dated April 22, 1920, *between the corporation and himself* for his employment by the corporation; and (3) a contract (Exhibit "C") of the same date between (a) the Largmans, (b) the corporation, and (c) himself, providing for the purchase of stock by him in the corporation and the repurchase of his interest by the Largmans. A suit in equity between these same parties was decided by us on appeal on June 30, 1932 (see Schuster v. Largman, 308 Pa. 520, 162 A. 305), and their rather complicated contractual relationships and business set up were detailed in that opinion.

In the instant case the court below held that there was a misjoinder of parties in that plaintiff had failed to aver a cause of action against the Largmans individually, and entered a decree directing the entry of judgment in favor of Harry Largman and Joseph Largman, unless within fifteen days the plaintiff amended his statement so as to show liability on the part of the individual defendants or discontinued suit against them. Plaintiff having failed to amend or to discontinue the action as to Harry

Largman and Joseph Largman, judgment was entered in their favor. Plaintiff appealed.

It is apparent that Exhibit "A," providing for the creation of the corporation, has no bearing on this action. The only provision of that contract relating to plaintiff's employment by the corporation is paragraph four, and it provides only for employment for one year; thereafter, it is expressly stated, "the term and terms of said employment shall be as may be subsequently determined by agreement of the corporation and the said Schuster." Exhibit "B," providing that plaintiff is to be employed by the corporation for a term of three years, beginning January 1, 1920, was between the plaintiff and the corporation, and the individual defendants were not parties to it.

Plaintiff's case must stand or fall upon Exhibit "C" which (as it recites) was executed simultaneously with Exhibit "B." He bases his claim upon paragraph eight of that contract,[1] and contends that his discharge was

---

[1] Paragraph 8 of Exhibit "C":

"The term of this agreement shall be three years, beginning as of January 1, 1920; by October 15th of the third year (1922) it shall be ascertained whether the Corporation has averaged net profits of at least ten per cent per annum on the whole par of all the Common Capital Stock plus also an amount sufficient to cover the Preferred Stock dividend, for the whole period of the term up to the said time, that is, from the beginning of the term until the time of such ascertainment. If the Corporation shall not have realized such net profits (including also said amount sufficient to cover the Preferred Stock dividend) averaged for said period, so ascertained, then the stock of said Schuster shall be subject to an option of purchase by the said Harry Largman and (or) Joseph Largman similar in all respects to the option in Clause 6, but the three months' period thereof to be reckoned from the termination of the term. If, however, there has been such a net profit (including also said amount sufficient to cover the Preferred Stock dividend) averaged for said period so ascertained, then, unless at least a majority of the Common Stockholders of the Company shall, by a writing addressed to the Company, indicate their desire that the agreement shall not be renewed (in which case it shall not be renewed), this agreement (and the employment

"particularly in violation of that paragraph." He calls attention to the provisions that the term of plaintiff's employment should be for three years beginning as of January 1, 1920, and if defendant made a certain profit as therein indicated, "then, unless at least a majority of the common stockholders of the company shall, by a writing addressed to the company indicate their desire that the agreement shall not be renewed (in which case it shall not be renewed), this agreement (and the employment agreement of said Schuster) shall thereby be renewed for a further term of three years, beginning as of January 1, 1923, and so on from the three-year term to three-year term." Plaintiff averred that during each triennial period from January 1, 1920, to January 1, 1929, defendant corporation made much more than the profit stipulated and that at no time during that entire period did the stockholders indicate their desire that the agreement should not be renewed.

We do not interpret the contract relied upon by plaintiff as an *employment* contract. This contract expressly refers to the fact that the contract of employment was by separate agreement, i. e., Exhibit "B." The agreement sued upon (Exhibit "C") states, inter alia, that "A written agreement of employment [Exhibit 'B'] had been simultaneously herewith entered into by the cor-

---

agreement of said Schuster) shall thereby be renewed for a further term of three years, beginning as of January 1, 1923, and so on from the three-year term to three-year term. If not so renewed, all the said shares of Common Stock then of the said Schuster shall be subject to an option of purchase by the said Harry Largman and (or) Joseph Largman similar in all respects to the option in Clause 6, but the three-months' period thereof to be reckoned from the termination of the particular term in question, and the price to be the book value plus 25% of the book value additional, or if said aggregate would be less than the par value of said shares plus 25% additional on said par, then the par value of said shares plus 25% additional on said par value; if the last said option be not exercised, then the Corporation shall be dissolved, unless the said Harry Largman and Joseph Largman and Schuster agree in writing on some other method of paying out the interest of said Schuster."

poration with said Schuster." Whatever *rights of employment* Schuster had, he acquired under the agreement of employment and not under Exhibit "C." This agreement of employment was *entirely with the corporation* and not with these individual defendants. A careful reading of paragraph eight reveals that the *defendants* did not agree to "renew" Schuster's employment agreement; that was a matter between the corporation and Schuster and over it *they as individuals* had no control. They agreed that in the event of certain periodical "averaged net profit" and in the absence of adverse action by a majority of the common stockholders, "this agreement [Exhibit 'C'] shall thereby be renewed for a further term of three years." In *parentheses* there was inserted after the words "this agreement" the following: "(and the employment agreement of said Schuster)." At most this parenthetical phrase amounted only to a declaration that the *understanding* of the parties to Exhibit "C" was that in the event stated, i. e., periodical "averaged net profit," etc., *Exhibit "B" (the employment agreement) would be renewed.* This is all it could possibly have meant, for *as individuals* the defendants were strangers to the employment agreement (Exhibit "B"), whose renewal they apparently took to be a matter of course if net profits were periodically satisfactory and the stockholders were correspondingly acquiescent.[2] Exhibit "C" does not, either expressly or by implication, indemnify plaintiff against loss in the event of his discharge by the corporation, and no such contract is pleaded. The only pleaded violation of Exhibit "C" is plaintiff's discharge "by action of the board of directors and not by action of the stockholders, in violation of terms of agreements marked Exhibits 'A' and 'B.'" Exhibit "B" was a con-

---

[2] A contract by which individuals agree that as stockholders or directors of a corporation they will act in a certain way to bind the corporation or that the corporation will act in a certain way, is void as being opposed to public policy. See West v. Camden, 135 U. S. 507, and Fletcher's Cyc. of Corporations, sections 280 and 5744.

tract to which the defendants were not parties and Exhibit "A" is out of this case.

Plaintiff's discharge by the corporation imposed no personal liability on the individual directors or stockholders. "Neither are the directors liable for having caused the corporation to breach its contract with a third person or corporation. Even if such liability did exist it would not be attached where the promisee could enforce the full satisfaction of his judgment obtained in an action against the corporation for breach of contract": 14A. C. J., section 1869, page 104, citing Lukach v. Blair, 178 N. Y. S. 8, in which the following principle was laid down: The reason for the rule is that such liability "would tend to leave the directors open to tort claims whenever the corporation had failed to perform a contract. In the exercise of their discretion and in acting on their judgment for the benefit of their corporation, the directors should be free from possible liability of that kind."

Appellant cites Vierling v. Baxter, 293 Pa. 52, 141 A. 728. The action there and its facts are so utterly at variance with the action and facts here as to make its citation useless. The action there was in trespass and it charged six persons who "were members of the corporation and in control thereof, . . . with conspiring to cheat and defraud" the plaintiff. The cause of action pleaded here is breach of contract of employment and the contract pleaded is not one of *employment of plaintiff by these defendants individually.* Neither did they discharge him. As the court below aptly said: "The statement fails to show any legal cause of action against the individual defendants, Harry Largman and Joseph Largman. It does not show that they as individuals ever employed the plaintiff or that there ever was any relationship of employer and employee between them by reason of any of the contracts referred to in the statement. . . . There is nothing in the entire statement of claim to show that the Largmans as individuals either attempted, or had any

power as such, to discharge the plaintiff. . . . The second and third agreements executed simultaneously, read together, indicate that the corporation by the second agreement became the employer, that the third agreement was only a stock sales agreement between Schuster and the Largmans, and that the corporation joined in the third agreement, Exhibit 'C', merely for the purpose of helping to enforce and carry out its terms. By joining in that sales agreement, the corporation had notice and agreed that 'compensation B' and Schuster's dividends should be paid to the Largmans on account of stock purchased, and that if Schuster violated the sales agreement, then the corporation should terminate Schuster's employment. It was in fact nothing more than a sales agreement between Schuster and the Largmans, the former pledging part of his salary and dividends and the corporation joining in for the purpose of furthering and enforcing the pledge."

We also agree with the court below that "The statement of claim failing to show any liability whatever on the part of the individual defendants, Harry Largman and Joseph Largman, the suit cannot be maintained as to them unless the statement is amended so as to show such liability. This defect in the statement cannot be cured by bringing the action against these individual defendants and the defendant corporation jointly and averring in general terms that, 'the defendants are jointly liable.' Such a statement is a mere conclusion of law and amounts to nothing as a pleading. Furthermore, it is in flat contradiction of the facts set forth in the statement itself. Plaintiff contends that by adding those words at the conclusion of the statement of claim, the pleading is brought within the provisions of what is commonly called the 'Joint Suit Act' of June 29, 1923, P. L. 981; and the Act of May 25, 1933, P. L. 1057, relating to joint actions on written instruments. This act cannot be construed to mean that a plaintiff may arbitrarily join any number of immaterial parties not related to the cause of action and

as to whom no liability whatever is shown and avoid the embarrassing requirements of the Practice Act of 1915 by merely appending to his statement of claim a rubber stamp allegation that, 'the defendants are jointly liable.' It is not necessary to give the act a construction which would produce such absurd consequences. Undoubtedly the Act of 1923 contemplated that the statement of claim should affirmatively show such facts as would indicate some liability as to each and every defendant named, but postpones the determination as to whether or not the liability is joint or several until the time of trial. There would be neither reason nor justice in requiring a defendant to go to the expense of preparing for trial when there is nothing in the entire statement of claim to show any liability, either joint or several, on his part, excepting the mere phrase, 'the defendants are jointly liable.' " See Cleary v. Quaker City Cab Co., 285 Pa. 241, 132 A. 185.

The judgment is affirmed.