McCartney et ux., Appellants, *v.* Hyman et al.

Argued October 26, 1938.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER and RHODES, JJ.

*A. Bernard Hirsch,* with him *Samuel M. Brodsky,* for appellants.

*Harold J. Conner,* with him *Harry Shapiro,* for appellee.

*Charles E. Kenworthey,* for appellee.

OPINION BY KELLER, P. J., March 3, 1939:

Appellants, husband and wife, brought an action in trespass against Dr. David A. Hyman and Dr. Dennis H. Simmerman to recover the damages suffered by them respectively because of the alleged negligent professional treatment which the defendants, who are practicing dentists, *separately* gave the wife plaintiff.

Verdicts were rendered in favor of the husband for $650 and the wife for $1350, and against the defendants in the amount of $1000 each.

The court entered judgments non obstante veredicto in favor of the defendants. Plaintiffs appealed, the husband's appeal being to No. 172 October Term, 1938, and the wife's to No. 192.

The matter was apparently not raised in the court below, but since these are appeals from the entry of judgments non obstante veredicto under the Act of April 22, 1905, P. L. 286, and it is therein made our duty to "review the action of the court below, and enter such judgment as shall be warranted by the evidence," we feel obliged to say that there was no warrant whatever for bringing a single action against these two defendants. The plaintiff's statement and the evidence in the case establish that there was no concert of action by the defendants and no community of fault or joint negligence on their part. Each of them maintained a separate dental office in the City of Philadelphia, and practiced his profession without any assistance and cooperation from, or association with, the other. Dr. Simmerman was not consulted professionally by Mrs. McCartney until from six to thirteen days after Dr. Hyman had finished his professional work upon her mouth, and the alleged negligence of each of them related to separate and distinct acts of commission or omission. There was no more right to sue them as joint defendants in one action than there would be to sue in one action two defendants who were alleged to have negligently injured the plaintiff wife in separate automobile accidents occurring six or thirteen days apart. See *Roberts v. Pitt Publishing Co.*, 330 Pa. 44, 198 A. 668. While it may be difficult accurately to allocate or apportion the injury and damage resulting from each accident or separate malpractice, that does not justify a joint action against defendants, who are in no community of fault. The Act of June 29, 1923, P. L. 981, does not help them. That statute authorizes the trial judge, in an action where it is pleaded that two or more defendants are jointly liable for the cause of action specified, and the

evidence does not justify a recovery against some of them, not to dismiss the suit as to all, but to submit to the jury the question of fact which, if any, of them are liable, or to dismiss the suit as to some and proceed against the others. (See *Cleary v. Quaker City Cab Co.*, 285 Pa. 241, 132 A. 185). But in order that the statute may apply, a joint liability must be pleaded in the statement of claim *(Schuster v. Largman,* 318 Pa. 26, 178 A. 45), while here the plaintiff's statement not only did not show a joint liability but averred the separate and distinct negligence and liability of each defendant. The act furnished no warrant for the entry of a joint judgment against the defendants, or separate judgments against them in a joint action, where both pleadings and evidence show no community of fault on their part.

Apart from this, however, we are of opinion that the action of the court below in entering judgment non obstante veredicto in favor of each defendant should be affirmed. In passing upon disputed matters of fact, we, of course, accept the version most favorable to the plaintiffs, since the verdicts were in their favor.

### I—Claim v. Dr. Hyman.

The basis of the claim against Dr. Hyman was that on June 8, 1935 he had extracted a wisdom tooth from the wife plaintiff's right lower jaw and had extracted it so carelessly that the tooth broke into parts, and that he had carelessly and negligently permitted a piece or fragment of the root to remain in her jaw; that he failed to take an X-ray photograph or ascertain whether he had removed the entire root of the tooth so extracted; and that the fragment or piece of root left in her jaw caused an infection to form, which infection developed into osteomyelitis of the jaw, an inflammation of the jaw bone, which extended acutely to both sides of her mouth, causing her great pain, disability and expense, to recover for which plaintiffs brought this action against him.

The difficulty with the plaintiffs' case was that the

evidence on the trial failed to establish the averments in the statement.

There was no proof of carelessness or negligence in the extraction of the tooth, which caused it to break. Teeth may break, while being extracted, without any carelessness or negligence on the part of the dentist. This tooth had broken before it was extracted. The failure of the defendant Hyman to take out the whole root or to discover the presence of part of the root in her jaw, especially after she came back and complained of the pain she was suffering, might be held negligence, but there is no evidence in the case that the infection which resulted in the osteomyelitis of the jaw which caused Mrs. McCartney the pain, disability and expense for which she sought to recover damages in this action, was caused by or resulted from the piece or fragment of root which Dr. Hyman left in her jaw *(Wohlert v. Seibert,* 23 Pa. Superior Ct. 213, 218). The proof on both sides showed that osteomyelitis is the result of an infection, which may occur without any negligence on the part of the dentist (See *Gentile v. De Virgilis,* 290 Pa. 50, 53, 54, 55, 138 A. 540), and is not the result of a piece of root left in the jaw. The infectious germs may be in the patient's tooth or mouth, and the extraction of the tooth may furnish an entrance way or point of entry for them into the patient's jaw or system, and result in osteomyelitis. Plaintiffs' own witness testified that an infection is a fairly common result from the extraction of a tooth; that it depends "a good bit" on the condition of the tooth which was extracted, whether it was diseased or infected, and the condition of the mouth, as respects germs. He would not say that the infection which followed the extraction in this case and resulted in osteomyelitis was caused by or due to the fragment of root left in the jaw for seventeen days. "Sometimes a tooth is buried in the jaw for years and never gives any trouble, and other times a tooth can be extracted, the whole tooth taken out, and a person can get a very

bad infection and also get an osteomyelitis at that time ...... It depends on the type of infection in it" (pp. 114a, 115a). Thus the causal connection between the piece of root which Dr. Hyman may have negligently left in the patient's mouth and the osteomyelitis for which she sought recovery in this action was not shown. Dr. Simmerman testified that the osteomyelitis did not *develop* until the latter part of August. The infection and the resulting osteomyelitis might have occurred if every particle of the root had been removed when the tooth was extracted.

It was admitted by plaintiffs that on August 3, after showing Dr. Hyman that a part of the root had been left in her jaw, he had paid Mrs. McCartney $12, the amount of the bill she had obtained that day from Dr. Simmerman for extraction of the root.

*II—Claim v. Dr. Simmerman.*

The claim against Dr. Simmerman rested on a different basis.

On June 14 or June 21, 1935,—depending on whether the testimony of Mrs. McCartney or Dr. Simmerman is accepted—, at the suggestion of Dr. Greenway, a physician and surgeon, the wife plaintiff consulted Dr. Simmerman, a specialist in dental surgery, who had no professional connection whatever with Dr. Hyman. By an examination and X-ray photograph Dr. Simmerman found that a piece of the root of the tooth which had been extracted by Dr. Hyman had been left in her jaw. Her mouth was then inflamed, infected and swollen and he advised her that he could not remove the fragment of root until the inflammation had subsided. Accordingly he delayed doing so until June 25, 1935, when he extracted it. During the interval, he and his assistants treated her jaw and mouth, and continued to do so until September 2, 1935, in the course of which treatment another tooth, which appeared to be infected, was extracted on August 14, 1935. On September 8, 1935, she consulted a physician, Dr. Stroup, who, in association

with Dr. Jackson, another dentist selected by him, treated her for the osteomyelitis until sometime in March, 1936, when Dr. Stroup himself had to go to the hospital because of illness, and she consulted other physicians. By their direction, she was sent to the Temple University Hospital, where she was operated upon on June 6, 1936 and June 20, 1936.

The negligence charged against Dr. Simmerman was (1) extracting the piece of root *too soon,* that is before the infection or inflammation had sufficiently subsided; and (2) treating the osteomyelitis which developed in her jaws without sending her to a physician, and without making proper progress in arresting the condition.

Here again, the proof failed to support the claim.

(1) There was no proof that the piece of root was extracted too soon. The testimony was that the root was not taken out until it was proper to do so. No one testified otherwise.

(2) The evidence in the case failed to show any negligence on the part of Dr. Simmerman and his associates. His duty or obligation was to employ such reasonable skill and diligence as is ordinarily exercised in his profession: *McCandless v. McWha,* 22 Pa. 261; *Potter v. Warner,* 91 Pa. 362; *Wohlert v. Seibert,* 23 Pa. Superior Ct. 213; *Veit v. Hinchcliffe,* 90 Pa. Superior Ct. 280. There is no testimony in the case that his treatment of the patient's mouth and jaw was not in accordance with that usual and recognized in dental and medical practice. A dental surgeon cannot be held responsible, any more than a physician or surgeon, for the failure of his patient to respond satisfactorily to treatment or make rapid progress towards recovery, provided he has used the treatment recognized and customary in the profession and employed reasonable skill and diligence.

Dr. Simmerman was a specialist in the extraction of teeth and in oral surgery and was competent to treat infections in the mouth and osteomyelitis of the jaw

bone without the advice of a physician. It is true that all dentists, just as all physicians, are required to take a general course and to pass an examination covering all branches; but in practice, some specialize as experts in certain branches, just as there are surgeons and other specialists in the medical profession, and Dr. Simmerman specialized in oral surgery, and the testimony was overwhelming that a dental surgeon was equipped and prepared to treat mouth infections and osteomyelitis of the jaw without the assistance or advice of a physician, and that it was the common practice in the dental profession to do so. See *Remley v. Plummer,* 79 Pa. Superior Ct. 117, 122; *Moscicki v. Shor,* 107 Pa. Superior Ct. 192, 197, 163 A. 341.

There was no witness for the plaintiffs who testified that Dr. Simmerman's treatment of Mrs. McCartney's mouth and jaw was improper or not in accord with the recognized treatment used in the dental and medical profession. Indeed the subsequent treatment she received from Dr. Stroup and Dr. Jackson and the other physicians who followed them did not differ materially from what Dr. Simmerman had been doing. Dr. Stroup testified that the proper treatment of Mrs. McCartney's mouth, when he first saw her, consisted in treating the infection of the mouth and waiting for the sequestrum to develop to a point where surgery, by way of removal of the sequestrum, was indicated; and that heat applications or short wave treatments were used only to get the sequestrum to form as quickly as possible; that osteomyelitis spreads of its own accord; "it just goes right ahead when it is once started"; and that the time when the sequestrum is in condition to be operated on must be left to the individual judgment of the person in charge of the case. Dr. Stroup was not a surgeon and did not feel qualified to perform such an operation himself, and the plaintiff's jaw was not in condition to be operated on until the following June. Compare this

with Dr. Simmerman's testimony as to the treatment indicated, and which he gave—"Osteomyelitis of the jaw bone is treated by a very slow treatment ...... the treatment is open drainage and irrigation and the proper taking care of this condition every so often (p. 200a); the sequestrum is the dead part of the bone ...... The short wave is only one theory ...... I advised heat." The only fault that Dr. Stroup could find with Dr. Simmerman's *treatment* was that a physician could have prescribed an opiate to dull the pain and make the patient more comfortable. He admitted that he was not familiar with dentistry nor competent to testify as to proper or recognized dental practice, but admitted that, in his opinion, a dentist was competent to treat infections of the mouth following extraction of teeth.

The evidence fails to show anything done by Dr. Simmerman in the treatment of this case which was contrary to the usual and recognized treatment for mouth infection and osteomyelitis of the jaw bone, at the stage in which the infection and osteomyelitis of the plaintiff were when she left him, and on the other hand the testimony in the case was greatly preponderant that his treatment was in accord with the usual and recognized dental practice. See *Remley v. Plummer*, supra; *Barnard v. Schell*, 85 Pa. Superior Ct. 329; *Duckworth v. Bennett*, 320 Pa. 47, 181 A. 558; *Gentile v. De Virgilis*, supra.

In this case there was no evidence of negligence such as was proved in *Wible v. Shor*, 102 Pa. Superior Ct. 527, 157 A. 322, where the dentist burned the patient's mouth with an overheated plate, or in *Dux v. Shaver*, 105 Pa. Superior Ct. 344, 161 A. 481, where he allowed a revolving emery disc to drop onto the patient's tongue and cut her mouth.

The assignments of error are overruled and the judgments are affirmed.