**Walter H. HSU, Appellant,**

v.

**VET–A–MIX, INC., and W. Eugene Lloyd, Appellees.**

**No. 90–1404.**

Court of Appeals of Iowa.

Oct. 29, 1991.

Kenneth F. Dolezal of Dolezal, Miller and Garrels, Cedar Rapids, for appellant.

Thomas T. Tarbox of Smith, Schneider, Stiles, Mumford, Schrage, Zurek, Wimer & Hudson, P.C., Des Moines, for appellees.

Heard by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.

DONIELSON, Judge.

Walter H. Hsu is a professor of veterinary pharmacology at Iowa State University. W. Eugene Lloyd, president of Vet-A-Mix, Inc. of Shenandoah, Iowa, is a veterinary toxicologist. Lloyd holds a Ph.D. and served on the active faculty at Iowa State University until 1982. In the summer of 1982, Hsu approached Lloyd concerning Hsu's idea to develop the drug Yohimbine to be used as an antidote to certain effects of the drug Xylazine. Xylazine is an analgesic medication often administered to animals prior to anesthesia. Vet-A-Mix, which is involved in the marketing of veterinary pharmaceuticals and injectable medicines, was interested in Hsu's research.

The parties agreed that Hsu would conduct the animal research necessary to obtain FDA approval for the medications using the University's facilities. In turn, Vet-A-Mix would provide the capital outlay to the University pursuant to a contract with the University, secure FDA approval, and then manufacture and distribute the products. The parties had three basic agreements providing for: 1) confidentiality; 2) cost-sharing with Iowa State University; and 3) royalty payments. Hsu agreed to keep his work confidential; Vet-A-Mix agreed to enter into a contract with the University wherein Vet-A-Mix would pay for the expendable supplies used in the research; and the University would supply its facilities and continue to pay Hsu's salary.

The parties orally agreed that Hsu would receive a royalty for his work on the project, but the precise royalty terms were never agreed upon. Although two written proposals for royalty payments were submitted by Lloyd, Hsu objected to the percentages of the royalties, their duration, and their termination upon Hsu's death.

During the years that followed, Hsu dedicated 508 hours to the project and continued to receive his University salary. At one point, Vet-A-Mix paid Hsu $7,380 for his work, but following a meeting with University officials, Hsu agreed to turn this money over to the University.

The parties also had several other disagreements concerning Hsu's performance of animal testing and his validation of results. Hsu refused to submit his raw data, and consequently, FDA approval was not expedited. Lloyd hired other researchers to reperform some of the studies. On May 27, 1986, Vet-A-Mix terminated its relationship with Hsu.

Hsu instituted these proceedings seeking damages based on breach of a constructive contract, promissory estoppel, quantum meruit and tortious interference with contractual relations. Vet-A-Mix filed a counterclaim alleging breach of contract and breach of fiduciary duty. The case was ultimately bifurcated and the issues of liability and damages were each submitted to a different judge. Judge McMinimee decided the liability issues. He denied recovery on the Vet-A-Mix counterclaim and on all of Hsu's theories except his claim for quantum meruit recovery. On the issue of damages, Judge Baker found that Hsu could not establish how many hours he was engaged in consultation work which was separate from the cost-sharing contract between Vet-A-Mix and the University. Accordingly, the district court denied Hsu's claim for damages. Hsu appeals.

■ Our scope of review in this law action is for correction of errors at law. Iowa R.App.P. 4. Findings of fact in an action tried to the court have the effect of a special verdict. *Id.* Therefore, such findings are binding upon us if supported by substantial evidence. Iowa R.App.P. 14(f)(1).

■ Hsu did not file a motion pursuant to Rule 179(b), Iowa R.Civ.P., requesting the court in either phase of the trial to enlarge or amend its findings. Therefore, on appeal, any challenge to the trial court's findings can be based only on the issue of the sufficiency of the evidence sustaining those findings. *See* Iowa R.Civ.P. 179(b).

Hsu presents three arguments on appeal. His first two arguments concern the trial court's findings of fact and conclusions of law in the liability phase of the proceedings. His third assignment of error relates to the trial court's judgment on the issue of damages.

## I.

■ A. Hsu's first argument asserts the trial court erred in failing to consider and apply certain sections of the Uniform Commercial Code and the Restatement (Second) of Contracts in deciding whether Hsu breached the parties' contract. These issues were not ruled on by the trial court, and Hsu did not bring these issues to the court's attention by filing a 179(b) motion. Therefore these issues were not properly preserved for our review. *Estate of Grossman v. McCreary,* 373 N.W.2d 113, 114 (Iowa 1984).

■ B. Hsu's first argument also asserts the trial court erred in finding that Hsu breached the contract because his agreement to facilitate and expedite FDA approval of the medicine implicitly required that he turn over such raw data and submit to such audits as would assist in obtaining FDA approval. However, the trial court did not rest its ruling upon this finding.

Rather, the court found that the royalty agreement between the parties was essentially an agreement to agree on the royalty compensation terms. As such, the court found the agreement too indefinite to be an enforceable contract. *See, e.g., Air Host Cedar Rapids, Inc. v. Cedar Rapids Airport Commission,* 464 N.W.2d 450, 453 (Iowa 1990) ("It is axiomatic that understandable or ascertainable terms are necessary ingredients for an enforceable contract."). Accordingly, the court denied Hsu's claim for breach of contract. The court also found the agreement was too indefinite to justify Hsu's alleged reliance and denied his promissory estoppel claim. *See National Bank v. Moeller,* 434 N.W.2d 887, 889–90 (Iowa 1989).

In reference to Hsu's duty to produce the raw data, the court stated:

*Assuming for purposes of discussion that the contract were established,* it is this Court's view that Vet-A-Mix justified its nonperformance and cancellation of the contract on the ground that Hsu failed to perform conditions precedent to

Vet-A-Mix's performance and materially breached the contract. (emphasis added).

Hsu does not contend the trial court erred in finding the royalty agreement fatally indefinite. Accordingly, we consider any argument he may have on this issue to be waived. Iowa R.App.P. 14(a)(3). Therefore, we affirm the trial court's judgment that the agreement was too indefinite to be an enforceable contract or to justify Hsu's claimed reliance.

## II.

A. Hsu's second argument challenges the trial court's dismissal of his claim against Lloyd for tortious interference with a contractual relationship. Hsu contends the trial court applied incorrect law when it held that corporate fiduciaries have a qualified privilege to interfere with corporate business relationships so long as they are acting in good faith to protect the interests of the corporation. We affirm the trial court.

The Iowa Supreme Court recognized the tort of interference with contractual relations in *Farmers Coop. Elevator v. State Bank*, 236 N.W.2d 674, 679–82 (Iowa 1975), and has since established the elements of the tort as follows:

An existing valid contractual relationship or business expectancy, knowledge of this by the interferer, intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resulting damage.

*Toney v. Casey's General Stores, Inc.*, 372 N.W.2d 220, 222 (Iowa 1985) (citing *Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398 (Iowa 1982)).

In *Bossuyt v. Osage Farmers National Bank*, the supreme court upheld the trial court's direction of a verdict in defendant's favor. 360 N.W.2d 769, 779 (Iowa 1985). The plaintiff had sought recovery on the theory that the defendant, an officer of a banking corporation, had induced the corporation to breach a contract it had entered into with the plaintiff by dishonoring a check written by plaintiff. *Id.* at 778. The supreme court quoted with approval language in *Wilson v. McClenny*, 262 N.C. 121, 132–33, 136 S.E.2d 569, 578 (1964) stating:

As either directors or stockholders, [the defendants] were privileged purposely to cause the corporation not to renew plaintiff's contract as president if, in securing this action, they did not employ any improper means and if they acted in good faith to protect the interests of the corporation. In other words, because of their financial interest and fiduciary relationship they had a qualified privilege to interfere with contractual relations between the corporation and a third party. Restatement, Torts § 769 (1939); 30 Am.Jur., Interference §§ 34, 37; Annot., 26 A.L.R.2d 1227, 1270. To hold otherwise, "would tend to hinder directors of a corporation from acting on their judgment for the interest of their corporation...." 3 Fletcher, Private Corporations § 1001; *May v. Santa Fe Trail Transportation Co.*, 189 Kan. 419, 370 P.2d 390; *Schuster v. Largman*, 318 Pa. 26, 178 A. 45.

*Bossuyt*, 360 N.W.2d at 778–79.

The reasoning used in *Bossuyt* has subsequently been followed in, among other cases, *Wolfe v. Graether*, 389 N.W.2d 643, 659–60 (Iowa App.1986). In *Wolfe*, we stated that, in instructing on the elements of a claim for tortious interference with contractual relations, the trial court should have instructed the jury that the defendant's actions were privileged if, in seeking termination of plaintiff's contract, he was acting in his capacity as an officer or director of the corporation. 389 N.W.2d at 660; *see Bump v. Stewart, Wimer & Bump, P.C.*, 336 N.W.2d 731, 738 (Iowa 1983).

█ Therefore, we affirm the trial court's judgment that corporate fiduciaries are protected by a qualified privilege to interfere with corporate business relationships so long as they are acting in good faith to protect the interests of the corporation.

█ B. Hsu also contends that Lloyd's involvement of Hsu's superiors at the Uni-

versity and Lloyd's alleged attempt to place Hsu in an embarrassing position constituted acts outside of Lloyd's corporate capacities. However, the trial court made no finding on the issue of whether Lloyd attempted to place Hsu in a compromising or embarrassing position. Because Hsu failed to file a 179(b) motion requesting the court to enlarge its findings to encompass this issue, this issue was not properly preserved for our review. *See Estate of Grossman,* 373 N.W.2d at 114.

■ Furthermore, we agree with the trial court's conclusion that there was nothing improper about Lloyd's bringing these matters to the attention of the University. Vet-A-Mix's contractual relationship with the University was an integral part of the overall agreement. Lloyd merely advised the University that unless Vet-A-Mix could have the studies satisfactorily completed there, he would move them to Kansas. The record indicates that Hsu continually threatened to refuse to produce raw data unless Vet-A-Mix offered terms that Hsu found satisfactory. Vet-A-Mix had reason to question the quality of Hsu's animal studies because they were unable to validate the results Hsu provided. Lloyd, as president of Vet-A-Mix, was clearly acting in good faith to protect the interests of Vet-A-Mix.

### III.

■ Finally, Hsu's third argument asserts the trial court erred in concluding that Hsu had presented insufficient evidence for the court to set damages. We interpret the trial court's verdict as a finding that Hsu failed to carry his burden of proof. *See Bebensee v. Ives,* 409 N.W.2d 710, 712 (Iowa App.1987). "[W]hen the trial court following a bench trial denies recovery because a party has failed to sustain its burden of proof on an issue, we will not interfere unless we find the party carried its burden as a matter of law." *Whiteaker v. State,* 382 N.W.2d 112, 114 (Iowa 1986).

It was determined in the liability phase of the trial that Hsu's quantum meruit claim was based on his consultation work

for Vet-A-Mix. The court found he was not entitled to compensation for time spent on research because he had been paid for that work by the University. In attempting to establish the amount of consulting work he had done for Vet-A-Mix, Hsu relied on the University policy regarding consultation. The Iowa State University policy provided that time spent by Hsu on consulting work could not exceed two days per month. Hsu testified that he worked on the project during 1985 and 1986 for a total of twenty-four months. Therefore, he claims to be entitled to compensation for forty-eight days of consultation time. Hsu presented no evidence, however, that all or any portion of those forty-eight days was spent on *consultation* work for Vet-A-Mix. The trial court declined to speculate on the number of days or hours dedicated by Hsu to consulting for Vet-A-Mix.

We agree and affirm the trial court.

The costs of this appeal are taxed to Hsu.

For all the reasons stated, the judgment of the district court is affirmed.

AFFIRMED.