LOUIS GOODMAN, TRUSTEE IN BANKRUPTCY OF THE A. D. RICH COMPANY, A CORPORATION, v. J. F. WHITE.

(Filed 24 October, 1917.)

1. Corporations—Secret Profits—Promoters—Trusts and Trustees—Actual Value—Burden of Proof—Consideration.

The promoters of a corporation are held to the duties of trustees and the obligation of directors, and may not take a secret or undisclosed profit in the organization by way of shares therein or otherwise; and where the business of a partnership has been incorporated, and it appears that a member of the firm has been bought out by a third person with money he has obtained from the bank on his own note, which is subsequently taken up by that of the corporation and paid by the corporation: *Held*, stock issued in the corporation to such third person is without consideration, the burden being on him to show the contrary, and he is liable to the receiver, in an action to recover the unpaid subscription.

2. Corporations—Subscriptions—Money Value—Directors—Statutes.

The subscriptions to the capital stock of a corporation constitute a trust fund for the benefit of creditors, and under our statutes a money payment is required, except when stock certificates are issued for merchandise or other property, the property shall be taken at its true value as ascertained by the directors, when acting within the terms of the statute, whose judgment then shall be conclusive, in the absence of fraud. Revisal, secs. 1160-1161.

CIVIL ACTION, tried before *Bond, J.,* at April Term, 1917, of NEW HANOVER.

The action is brought to recover $8,200 on the defendant's subscription, at par, to 82 shares of stock of The A. D. Rich Company, a bankrupt corporation. The subscription is admitted, and also all the allegations of the complaint, except two alleging that the stock has not been paid for. It is admitted that the plea of payment is the only issue before the Court.

His Honor instructed the jury that, upon all the evidence, the plea of payment was not sustained, and directed a verdict for plaintiff. Defendant excepted, and from the judgment rendered appealed.

*Kenan & Wright and E. K. Bryan for plaintiff.*
*Robert Ruark for defendant.*

BROWN, J. Viewing the evidence in its most favorable light for defendant, it discloses these facts:

A. D. Rich and one Sneed owned a furniture business in Wilmington, known as The Poore-Sneed Furniture Company. Rich and defendant agreed to buy out Sneed's half interest and to convert the business into a corporation, to be promoted and organized by them and called The A. D. Rich Company, with a certain capitalization. Sixty per cent of the stock was subscribed for and to be issued to Rich, and 40 per cent, 82 shares, was subscribed for and to be issued to defendant.

Before the corporation was incorporated, Sneed's interest in the furniture company was purchased for $4,000. All of this money was obtained by defendant from a bank, on his note, which it was agreed between the two promoters should be taken up by the corporation after its organization. Afterwards, the corporation was organized, and took over the entire stock and business of the Poore-Sneed Furniture Company, and then it took up the $4,000 note of defendant with the bank and substituted its own note therefor.

The defendant testified: "I paid $4,000, or loaned Rich the money to pay for it. I did not pay one dollar of it that was not afterwards assumed by some one else. The $4,000 was assumed by The A. D. Rich Company."

The basis of the plea of payment is set forth in the statement made by defendant's counsel to the Superior Court: "We do not contend that Mr. White paid over to The A. D. Rich Company, as such, in cash for the stock issued to him, but that the stock issued to him was paid in the transfer of the assets of the Poore-Sneed Company, first to Rich and White, and later by Rich and White to The A. D. Rich Company."

As we understand it, the contention of defendant is that he borrowed $4,000 and purchased Sneed's half interest in the furniture company and let the A. D. Rich corporation take it as soon as it was incorporated; that the corporation paid defendant's $4,000 note, and in addition issued to him $8,200 in stock as the consideration, thus paying $12,200 in money and stock for what cost the defendant only $4,000.

Such a transaction as that cannot be upheld. It is *contra bonos mores* and against sound public policy, as well as the statutes of this state.

The defendant and his associate, Rich, were the promoters of the A. D. Rich corporation, and as such occupied a fiduciary relation to it. Promoters occupy such a relation of trust and confidence towards the corporation they are calling into existence as requires the same good faith on their part which the law exacts of directors of corporations and other fiduciaries.

"They are trustees," says 10 Cyc., 274, "in a sense which disables them from taking to themselves a secret profit made out of their trust to the

detriment of the future corporation or its members." In organizing the intended corporation, the promoters are required to see that it is provided with a board of directors which in dealing with them will act independently for the corporation, and not for them. The promoters must also make a full and fair disclosure to the directors of their interest and of all the facts concerning the property they propose to sell to the corporation. 10 Cyc., 275; *Erlanger v. Phosphate Co.*, 3 App. Cases, 1218.

The common form which such breaches of trust upon the part of promoters generally takes is to purchase property at one valuation and to sell it to the corporation at a much higher, without making full disclosure. Such transactions, says *Judge Thompson*, can never be allowed to stand where justice is properly administered. 10 Cyc., 276; *Parker v. Nickerson*, 137 Mass., 487; *Simmonds v. Oil Co.*, 100 Am. Dec., 628.

It is elementary learning now that the subscriptions made to the capital stock of a corporation constitute a trust fund for the protection and security of its creditors. In order that such subscriptions may be protected in their integrity and not become a means of deceiving those who deal with the corporation, our statute provides that "Nothing but money shall be considered as payment of any part of the capital stock of any corporation organized under this chapter, except as herein provided in the case of the purchase of property or labor performed." Revisal, sec. 1160.

Section 1161 provides how and under what conditions the corporation may take property necessary for its business in payment for its stock, declaring that the property shall be taken at its true value, to be ascertained by the directors, and "that, in the absence of fraud, the judgment of the directors as to the value of the property shall be conclusive." This subject is fully discussed in *Hobgood v. Ehlen*, 141 N. C., 345, where it is held: "In the absence of charter restrictions, a corporation may take property which is reasonably necessary for its legitimate business in payment of its stock, but when so received the property must be taken at its reasonable monetary value. Although a margin may be allowed for an honest difference of opinion as to value, a valuation grossly excessive, knowingly made, while its acceptance may bind the corporation, is a fraud on creditors, and they may proceed against the stockholder, individually, who sells the property, as for an unpaid subscription."

The burden of proof upon a plea of payment is on the one pleading it, the defendant in this case. He admits that the stock was not paid for in money, but in property. He must therefore establish that the property was taken in payment at its true value, and, further, that such value was approved by a board of directors acting independently in the interest

26—174

of the corporation, whose judgment is conclusive, except in case of fraud.

The defendant has failed to establish either of these essential requirements of the statute. According to his own evidence, defendant purchased Sneed's interest in the furniture company for $4,000 and transferred it to the corporation for $12,200, of which $8,200 was in the corporate stock subscribed for, at par, and $4,000 in defendant's note, which the corporation took up for him.

There is no evidence that the board of directors, acting independently in the corporation's interest, fixed the value at which the property was taken. In fact, there is no evidence there was a board of directors, although we assume there was. But who constituted the board? Necessarily, the defendant, his son (who owned one share), and Rich, for they owned the entire capital stock of the corporation.

Is it to be supposed for a moment that a directorate so constituted would act independently in the corporation's interest in purchasing property from one of its members?

The law forbids that the same person shall act as buyer and seller, both. This is a clear case where the promoter and subscriber should be made to pay for his stock, and is very similar to *Hobgood v. Ehlen, supra.* We think his Honor was correct in directing a verdict for plaintiff.

No error.