## First Department, July, 1956

### (July 3, 1956)

A. S. RAMPELL, INC., Appellant-Respondent, *v.* HYSTER COMPANY et al., Respondents-Appellants.

MEMORANDUM BY THE COURT. The order of Special Term denying defendants' motion addressed to the second amended complaint is modified to the extent that the fifth and sixth causes of action are dismissed. On plaintiff's cross appeal, that part of the order of Special Term dismissing the fourth cause of action is modified to the extent that that cause of action is reinstated. As so modified the order is affirmed. In our opinion the fourth cause of action is sufficient. The allegations of the fifth and sixth causes of action are insufficient to constitute a cause of action. Settle order.

BREITEL, J. (dissenting in part). I dissent in part and vote to further modify the order to the extent of dismissing the first and third causes of action, without leave to replead.

The six causes of action contained in the second amended complaint arise out of a manufacturer-distributor relationship of 14 years' standing. Common to the first four causes of action are the allegations that the distributorship of plaintiff was terminated by defendant manufacturer and the taking over of four employees of plaintiff distributor, and, impliedly, that a factory branch was set up by the manufacturer in lieu of plaintiff's dealership.

I agree with the majority's disposition on the second, fourth, fifth and sixth causes of action, the second and fourth being sustained as sufficient and the fifth and sixth being dismissed as insufficient. The second and fourth causes of action are sufficient because the gravamen is participation by defendants, or one of them, in a wrongful act, namely, breach of fidelity by an employee while still employed (*Duane Jones Co.* v. *Burke,* 306 N. Y. 172). The fifth and sixth causes of action are insufficient because the gravamen depends upon alleged oral promises so vague and so indefinite as to be incapable of fixing responsibility between the parties or of providing a basis for judicial enforcement, either on the theory of breach of contract or fraudulent misrepresentation.

The first and third causes of action, which should also be dismissed, depend upon a novel application of principles of law which are not defined. Both causes of action depend upon the single fact that, after some 14 years of relationship,

defendant manufacturer terminated the distributorship of plaintiff dealer and, at the same time, solicited and took over four employees of the dealer, each of which employees was not employed under contract with fixed duration. Thus we have a situation where the distributorship was terminable at will and the employment of the employees taken over was likewise terminable at will. For the doing of these acts, namely, the terminating of the distributorship and the soliciting of the dealer's at-will employees, the dealer claims damages in tort. This is claimed even though, concededly, the acts were done in the economic self-interest of the manufacturer and its district manager, Shaffer. For, the manufacturer had decided to become its own distributor, market its own product, and thus " compete " with its former dealer.

In the field of tort involving interference with contractual or commercial relations, certain clear lines of liability have been laid out. Unjustified, intentional interference with an existing contract, by inducing its breach, even where there is economic motivation in the form of self-interest, grounds a tort. (*Benton* v. *Kennedy-Van Saun Mfg. & Eng. Corp.*, 2 A D 2d 27; *Lumley* v. *Gye*, 2 El. & Bl. 216; Prosser on Torts [2d ed.], p. 720 *et seq.*) Intentional interference with economic prospects or advantages will ground a tort if, and only if, the act is done without economic or other excuse or justification, but results from malice alone. (*Brandt* v. *Winchell*, 283 App. Div. 338, 286 App. Div. 249; *Ruza* v. *Ruza*, 286 App. Div. 767; Prosser on Torts [2d ed.], p. 745 *et seq.*)

There is no rule of law, however, in tort or in contract, which fixes liability upon a defendant for procuring, with economic self-interest, a termination of at-will relationships, in the absence of other unlawful or " tortious " acts, perhaps, which, with respect to plaintiff, are otherwise insufficient of themselves to give rise to a cause of action. (*Coleman & Morris* v. *Pisciotta*, 279 App. Div. 656; *Eastern Air Devices* v. *Gaites*, 281 App. Div. 761; *Luisoni* v. *Barth*, 2 Misc 2d 315; *Bradford* v. *Sonet*, 64 N. Y. S. 2d 876; *Squibb & Sons* v. *Ira J. Shapiro, Inc.*, 64 N. Y. S. 2d 368; *Scott* v. *Prudential Outfitting Co.*, 92 Misc. 195; Restatement, Torts, §§ 766 [especially comment c]–768. But cf. *Herman* v. *First Merrick Corp.*, 99 N. Y. S. 2d 119; *Silva* v. *Bonafide Mills*, 82 N. Y. S. 2d 155; Prosser on Torts [2d ed.], pp. 726–727.)

While loose language may be found in texts or in opinions, not necessary to decisions, that at-will contractual relationships are entitled to some limited protection from economically motivated interference, on analysis they depend on wrongful or " tortious " acts used as the means of interference (Carpenter, Interference with Contract Relations, 41 Harv. L. Rev. 728, 730–732, 742 *et seq.*; see, especially, cases cited in Prosser on Torts [2d ed.], pp. 726–727, note 55). Or they relate to unconstitutional interference by statute with the " freedom of contract ", which is hardly relevant to the scope of private tort liability (e.g. *Truax* v. *Raich*, 239 U. S. 33, often cited in this area).

Relevant to the issues in this case, and supportive of the analysis suggested here is the leading case of *Beardsley* v. *Kilmer* (236 N. Y. 80). There a rival newspaper was set up and plaintiff's newspaper eventually driven out of business. The new paper had taken over employees from the old. However, after a searching analysis of the legal principles involved the court held that there was no actionable wrong. Explicit in the view of the court was the broad freedom of action in a competitive community so long as law is not violated or contract breached.

Until now this, the supplanting of another's at-will relationships, has been one of the freedoms vouchsafed in a competitive community. If one wishes to escape the hazards of competitive solicitation of one's at-will employees or competitive termination of an at-will contractual relationship, the remedy is by contract providing for extended duration by mutual agreement. Any departure in this

new area must recognize far-reaching implications in the conduct of competitive business and should provide objective standards to govern the relationships of the parties between whom liability might arise. None is suggested here. Rather, there is dependence upon some vague impression that the conduct of the defendant manufacturer and its district manager was not nice, which undoubtedly it was not. Nor is there more than a shadowy pretense of a relevant fiduciary obligation between the manufacturer and the distributor. On such ill-defined and shifting basis no sound principles of law can be supported. Moreover, involved is the freedom of opportunity for employees to better themselves, and of businesses to expand generally or by vertical integration, exposing, therefore, all enterprises to attrition by privileged competition, short of induced breach of contract or violation of law.

Accordingly, the order, insofar as it held sufficient the first and third causes of action should be modified, the motion granted and the causes of action dismissed without leave to replead.

RABIN, J. (concurring and dissenting in part). I concur in the affirmance of that portion of the order of Special Term insofar as it denied defendant's motion to dismiss the first and third causes of action. I believe them to be good. The plaintiff acted as the sales agent of the defendant for a period of 15 years — with the right on the part of the defendant to cancel such relationship. The parties worked in close co-operation under a written agreement for that length of time. The books of the plaintiff were open to the defendant at all times and the parties worked closely together. This was no arm's length arrangement, but one of close, largely noncompetitive business relationship. I feel that not only do good morals impose, but the law itself should impose a duty upon the defendant, in these circumstances, to refrain from interfering with the relationship existing between the plaintiff and its employees, even though the employees did not have definite contracts but could be discharged at the will of the plaintiff. Defendant should have refrained from such interference at least until such time as it terminated the distributorship of the plaintiff. Plaintiff should not have been required to be on the alert to protect itself against the enticement of its employees by this defendant during the continuance of the relationship between the parties. For that reason I vote to affirm with respect to cause of action No. 1. For the same reasons cause of action No. 3 should likewise be sustained.

I dissent, however, from the dismissal of the fifth cause of action. It pleads a modification of the original agreement in two respects. First — by defendant agreeing to extend the term of the contract for a long period. That is too indefinite to be enforcible. Second — by the defendant agreeing to give a reasonable notice before termination. It is alleged that despite the modification defendant failed to give such notice. That in my opinion constitutes a good cause of action and the loss of profits sustained by plaintiff for a period which a jury may find constitutes reasonable notice, is properly pleaded as damages.

With respect to the sixth cause of action — while I agree that it is insufficient in that damages are not properly alleged — I think leave should be given to amend. The sixth cause of action is substantially the same as the fifth with the exception that it is based in fraud rather than in breach of contract. The fraud alleged is that although the defendant agreed to the amendment of the original contract between the parties to give plaintiff reasonable notice prior to determination, yet at the time of making such agreement it never intended to carry out its promise. That makes out a good cause of action. The damage which may be recovered however is not the same in fraud as it would be for breach of contract as alleged in the fifth cause of action. The plaintiff may not recover for loss of profits for that would be an attempt to enforce the contract. Fraud looks

toward rescission. Plaintiff must allege damages solely resulting from the alleged fraud.

Accordingly, I vote to affirm with respect to the first and third causes of action, and vote to affirm with respect to the fifth cause of action. I vote to modify the finding of the lower court with respect to the sixth cause of action to the extent of permitting the plaintiff to replead. In all other respects I concur with the majority.

Peck, P. J., and Cox, J., concur in Memorandum by the Court; Breitel, J., dissents in part and votes to further modify so as to dismiss, in addition, the first and third causes of action, without leave to replead, in opinion, in which Botein, J., concurs; Rabin, J., concurs in part and dissents in part in opinion.

Order modified in accordance with memorandum and, as so modified, affirmed. Settle order on notice.