S. E. WILSON v. G. GAY McCLENNY, D. F. McDAVID, WALTER G. MASON
AND WILLIAM M. McCLENNY.

(Filed 12 June 1964.)

**1. Corporations § 1;   Contracts § 6—**

The preincorporation agreement between certain promoters that they would vote their stock and use their influence to secure the election of each of them as a director and the election of one of them as president and another of them as vice president for a period of five years at a specified salary, etc., is not void as contrary to public policy, G.S. 55-24(a), G.S. 55-73(a), G.S. 55-73(c), and the contract will be upheld when it does not violate any express charter or statutory provision, contemplate an illegal object, or involve any fraud or wrong against other stockholders.

**2. Contracts § 19—**

A novation is a substitution of another agreement for a pre-existing one so that the old contract is extinguished in accordance with the intent of the parties.

**3. Contracts § 12—**

A contract must be construed to ascertain the intent of the parties, and where the agreement is in writing this must be ascertained from the language used construed with regard to the purpose to be accomplished, the situation of the parties at the time the agreement was entered into, and the subject matter of the contract.

**4. Corporations § 1;   Estoppel § 4—**

Where a preincorporation agreement among promoters provides that the parties will vote their stock and use their influence to have one of their number elected president for a period of five years, and at the first directors' meeting the term of the corporate officers is fixed at one year, the acceptance of the one-year term, without evidence that the incumbent intended to release the other promoters or that the other promoters thought they were released, does not constitute a novation, or estop the incumbent from suing for damages for breach of the agreement upon his failure to be reelected.

**5. Master and Servant § 10—**

A contract of employment is subject to the implied condition that the employment may be terminated at any time for cause, and the use of alcohol to the extent that it interfers with the proper discharge of the duties of the employment is cause for discharge.

**6. Same;   Corporations § 1;   Trial § 27—**

In a suit for breach of provisions of a preincorporation agreement that defendant promoters would use their votes and influence to have plaintiff promoter elected president for a period of five years, nonsuit on the ground that plaintiff's addiction to alcohol justified the termination of the agreement for cause may not be properly entered when plaintiff denies that he used alcohol to the extent that it interfered with the proper discharge of

his duties, since nonsuit may not be entered upon a controverted affirmative defense.

**7. Corporations § 4—**

Directors owe the duty of fidelity to the corporation and to use due care in the management of its business. G.S. 55-35.

**8. Corporations § 3;    Contracts § 31—**

The right of action for interference with contractual obligations by a stranger to the contract exists where such interference is wrongful, and does not obtain where the interference is exerted by officers or directors of the corporation in terminating the employment of third persons by the corporation provided they act in good faith to protect the interests of the corporation, since officers and directors of the corporation are under duty to act in its interests and no liability can attach from the *bona fide* exercise of this duty, even in the event of an error of judgment.

APPEAL by plaintiff from *Fountain, J.,* September 16, 1963 Session of NASH.

The complaint alleges two causes of action against the defendants named in the caption. The first is for the breach of a contract entered into between the plaintiff and defendants wherein they agreed to promote the incorporation of Gateway Life Insurance Company (Gateway) and thereafter to promote the interests of each other in that corporation. The allegations specify the failure of the defendants to promote the interests of the plaintiff as therein agreed. For his second cause of action, plaintiff alleges a tortious interference by the defendants with the contractual relationship between himself and Gateway, and he asks for both compensatory and punitive damages. Although plaintiff instituted this action against the four named defendants, Walter G. Mason was never served with summons. Therefore, the only defendants are G. Gay McClenny, D. F. McDavid, and William M. McClenny.

The three defendants filed a joint answer in which they deny all the material allegations of the complaint. As affirmative defenses, they allege that even if the instrument upon which plaintiff bases his first cause of action is a contract he still cannot recover because: (1) it was void as against public policy; (2) it has been superseded by a contract between plaintiff and Gateway (novation); (3) plaintiff has waived his rights under the contract and is estopped to claim under it; and (4) plaintiff has not performed his duties under the contract because of alcoholism.

Plaintiff's evidence, taken in the light most favorable to. him, was sufficient to establish these facts:

For thirty-five years prior to October 1, 1958, plaintiff had been engaged in the insurance business. He had worked for four insurance companies and had participated in the organization and establishment of two of them. From 1947 to September 30, 1948, he had been president of the Coastal Plain Life Insurance Company. At age sixty he had retired as its president and, under an oral contract, had become vice-chairman of the Board to serve in an advisory capacity for an indefinite period at a salary of five hundred dollars a month. In October 1958, the four named defendants, being desirous of organizing an insurance company, sought out plaintiff because of his knowl-· edge and experience in the field and importuned him to join them in the promotion and organization of the Gateway Life Insurance Company. As a result, plaintiff resigned his position with Coastal Plain and entered into the following contract with defendants:

THIS AGREEMENT made and entered into this 21st day of November, 1958, by and between S. E. Wilson, G. Gay McClenny, D. F. McDavid, Walter G. Mason and Wm. M. McClenny, by and between each other.

WHEREAS, the parties hereto are associated together for the purpose of establishing a Stock Insurance Company, with capital and surplus of Four Hundred Thousand ($400,000.00) Dollars to handle all types of insurance on the lives of people, and each party hereto is endeavoring to promote said business by the procuring of stock subscriptions and business for the proposed insur-· ance company; and the parties hereto expect to take a prominent part in the conduct and operation of said business and deem it advisable that the respective positions to be held by them be agreed upon among themselves as parties hereto:

NOW, THEREFORE THIS AGREEMENT WITNESSETH:

That in consideration of the premises, the mutual promises to each other and efforts on behalf of each other, herein, it is mutually agreed that the parties hereto shall work together with each other, use their influence and· stock votes under their direct and indirect control for the following purposes on behalf of each other.

1.   That each party shall become director of said company;

2.   That S. E. WILSON shall become President of said company;

3.   That G. GAY McCLENNY shall become Vice-President of said company;

4. That Wm. M. McClenny shall be Vice-President and General Counsel for said company with retainer fee of $200.00 the first year with a proportionate increase for future years in accord with the increase of duties as such and customary fees incidental to the office of General Counsel of an insurance company.

5. That DANIEL McDAVID shall become Asst. Vice-President and SPECIAL ACCOUNTS (*sic*) of said company.

6. That contracts for the services of S. E. Wilson and G. Gay McClenny as officers of said company for a five year period be secured with first year salary of Ten Thousand ($10,000.00) Dollars each with an increase thereof for the next successive four years, contingent upon the progress of the company.

That this Contract which is made in duplicate is of a confidential nature and is not to be exposed or disclosed in any manner to anyone other than the signers hereof for any reason, cause, or purpose, except in the case of bad faith on the part of any party hereto toward any party or parties hereto in the accomplishment of the purposes hereinabove set forth in this contract.

Witness the following signatures and seals.

|                          |        |
|--------------------------|--------|
| s/ S. E. Wilson          | (SEAL) |
| s/ G. Gay McClenny       | (SEAL) |
| s/ D. F. McDavid         | (SEAL) |
| s/ William M. McClenny   | (SEAL) |
| s/ Walter G. Mason       | (SEAL) |

This agreement was prepared by the defendant William M. McClenny, an attorney practicing in the State of Virginia. He informed the five signatories that its purpose was to keep any one of them from getting "kicked out" of the company after he had expended time and money in its organization, and that the agreement was "perfectly legal and would hold up in anybody's court." Thereafter, plaintiff devoted his time to promoting and organizing the corporation and, along with the defendants, invested his money in its stock. He solicited stock subscriptions from others, collected necessary funds, secured licenses to operate in both North Carolina and Virginia, and prepared the usual forms required in the operation of an insurance company. The corporate charter was issued in May 1959. At crucial periods plaintiff lent the corporation the money it had to have to begin business and to continue operation.

Gateway had thirteen initial directors. They held their first meeting on October 23, 1959. None of the directors, other than the parties to this action, knew anything about the foregoing contract of November 21, 1958 and it was never discussed among them. At that meeting the duration of the officers' employment was the subject of considerable discussion, and a number of directors objected to any term longer than one year. Plaintiff and G. Gay McClenny expressed themselves as favoring a longer term. However, bylaws were adopted which provided that the officers should hold office for one year only.

Plaintiff was elected president of the new corporation at a salary of ten thousand dollars a year payable at $833.33 a month. Defendant G. Gay McClenny was elected vice-president at the same salary, and defendant William M. McClenny was elected general counsel. They all signed contracts of employment for one year. There was never any discussion between the signatories as to the effect of the bylaws and the one-year contracts upon their agreement. According to the plaintiff, employment for one year was "the usual practice." He testified:

> "After the Gateway Life Insurance Company was organized and the by-laws were adopted and I was elected president of the company to serve for one year, I never mentioned to Mr. Mc-David and the McClennys and Mr. Mason about furthering this contract to get me a contract of employment for five years. I have never heard of a five-year contract. I was supposed to have been re-elected every year for five years. That's all I was looking for. I would have been re-elected with the help of these folks here, the defendants. That contract right over there told me that I was supposed to be re-elected."

During the month of January 1960 plaintiff committed himself as an inebriate to the State Hospital in Raleigh where he remained for twenty-one days. From the time of his return on January 25, 1960 until April 10, 1961, there was no other occasion when he was incapacitated and unable to attend to the affairs of the corporation. He did not take a drink for six to eight months. During the time plaintiff was president of Gateway, his dealings with the lending institutions for which Gateway wrote credit insurance were satisfactory. All of the directors of Gateway knew that plaintiff had a drinking problem and all were concerned about it.

At a directors' meeting on February 11, 1961, which the defendants attended, plaintiff was instructed to procure and mail out to the stockholders the proxies for the annual stockholders' meeting on April 10, 1961, naming himself, Young A. Pully, and defendant G. Gay Mc-

Clenny as attorneys-in-fact for the absent stockholders. This plaintiff did. At that time there were forty thousand shares of stock outstanding.

At no time prior to the meeting on April 10th did the defendants or anyone else have any conversation with the plaintiff concerning his continued employment by the company. A few minutes before the stockholders' meeting, Mr. E. W. Duffner and Mr. C. B. Hines came to his office and told him that they had been selected by a group of eleven directors, including the defendants, to ask him to resign. The five directors living in Rocky Mount had not been informed of this plan. When plaintiff refused to resign, Duffner told him that they had enough proxies to do anything they wanted to do. The group had obtained proxies representing 21,561 shares.

When the stockholders' meeting convened, defendant William M. McClenny was elected chairman of the meeting. Duffner nominated a slate of directors which did not contain plaintiff's name and there were no other nominations. Before the election, Marshall Spears, Henry Johnson, and John W. Lewis, three of the directors residing in Rocky Mount, objected because plaintiff had not been nominated. They argued that the company should retain him as a director and president "and put him on a period of probation with the understanding that he would do or not do these things as prescribed by the Board." The three defendants opposed this recommendation. At one time defendant McDavid informed plaintiff's proponents that plaintiff was out because they had the votes. In the stockholders' meeting plaintiff did not nominate himself or attempt to vote the eighteen hundred shares which he controlled in any manner. He testified, "I did not object to the form or manner of election of these directors at this meeting because it appeared, and I had been informed, that they had enough to do whatever they wanted to."

The directors nominated by Duffner were elected and they held a meeting immediately after the stockholders adjourned. Messrs. Lewis, Spears, and Johnson recommended that Mr. Wilson be retained as chairman of the Board but the defendants opposed this recommendation. Mr. Shirley Mitchell was elected president and plaintiff was notified that he was no longer an officer of the company. At that time plaintiff was sixty-two years old.

Thereafter, in discussing the ouster of plaintiff, defendant G. Gay McClenny stated that the directors wanted to replace plaintiff because they felt he had been negligent and that he, McClenny, had obtained many of the proxies which had enabled them to control the stockholders' meeting and depose the plaintiff. Each of the three defendants

was examined adversely. In effect, each testified that he did not use his influence or his stock votes to keep plaintiff as a director or president of the company and, had plaintiff been nominated, his obligation to the stockholders and the welfare of the company would have required him to vote against plaintiff. Defendant W. M. McClenny said that the three defendants had agreed among themselves to oust the plaintiff if they could get the necessary votes to do it.

At the close of plaintiff's evidence, the defendants moved for a judgment as of nonsuit as to both causes of action. The motions were allowed and plaintiff appealed.

*Battle, Winslow, Merrell, Scott & Wiley for plaintiff.*
*Bridgers, Horton & Britt and Dill and Fountain for defendants.*

SHARP, J.   The first question presented by this appeal is whether the agreement of November 21, 1958 was void as against public policy. This preincorporation contract between the parties was intended to serve as a stockholders' agreement after incorporation. Such agreements are governed by the general principles of contract law. 13 Am. Jur., *Corporations* § 127. The signatories bound themselves "to use their influence and stock votes" to secure the election of each as a director and the election of plaintiff by the directors as president of the corporation for a five-year period at a beginning salary of ten thousand dollars with indefinite annual increases during the succeeding four years "contingent upon the progress of the company." Whatever may have been the legal status of such an agreement prior to the enactment of the Business Corporation Act of 1955, (see *Harvey v. Improvement Co.*, 118 N.C. 693, 24 S.E. 489; *Bridgers v. Staton,* 150 N.C. 216, 63 S.E. 892; Annot. 45 A.L.R. 2d 799, 821), it is clear that this contract is not now prohibited by law. Under G.S. 55-24(a) the board of directors is given the right to manage the affairs of the corporation "subject to the provisions of the charter, the bylaws *or agreements* between the shareholders otherwise lawful. . . ." (Italics ours). G.S. 55-73(a) permits two or more shareholders of a North Carolina corporation to enter into a written agreement to vote the shares held by them as a unit for the election of directors. This section provides:

> "An otherwise valid contract between two or more shareholders that the shares held by them shall be voted as a unit for the election of directors shall, if in writing and signed by the parties thereto, be valid and enforceable as between the parties thereto, but for no longer than ten years from the date of its execution. Nothing herein shall impair the privilege of the corporation to

treat the shareholders of record as entitled to vote the shares standing in their names, as provided in G.S. 55-59 nor impair the power of a court to determine voting rights as provided in G.S. 55-71."

Likewise, the contract to elect plaintiff president of the corporation at a specified salary is not subject to the usual objection that it interferes with the discretion of the directors in view of the provisions of G.S. 55-73(c), to wit:

"An agreement between all or less than all of the shareholders, whether solely between themselves or between one or more of them and a party who is not a shareholder, is not invalid, as between the parties thereto, on the ground that it so relates to the conduct of the affairs of the corporation as to interfere with the discretion of the board of directors, but the making of such an agreement shall impose upon the shareholders who are parties thereto the liability for managerial acts that is imposed by this chapter upon directors."

Thus, the Business Corporation Act clearly aligns North Carolina with the majority of jurisdictions which hold that a contract entered into between corporate stockholders by which they agree to vote their stock in a specified manner — including agreements for the election of directors and corporate officers — is not invalid unless it is inspired by fraud or will prejudice the other stockholders. The cases are collected in an annotation: Validity and Effect of Agreement Controlling the Vote of Corporate Stock, 45 A.L.R. 2d 799, 802. See also 18 C.J.S., *Corporations* § 551(b); 19 C.J.S., *Corporations* § 716(d); 17 C.J.S., *Contracts* § 199. The modern view is stated in Fletcher, *Private Corporations,* §§ 191 and 208: "No public policy forbids contracts for promoting and managing a corporation according to law and for lawful purposes, or for determining among themselves (the promoters) what the stock shall be and how it shall be divided, *or for election of themselves as officers and employment by the corporation when formed."* (Italics ours). "A contract for employment of a promoter as a corporate officer, made among the promoters, is not necessarily against public policy or in fraud of the corporation. . . ." Accord: *King v. Barnes,* 109 N.Y. 267, 16 N.E. 332.

The rationale of this rule is aptly stated in *Mansfield v. Lang,* 293 Mass. 386, 200 N.E. 110, a case involving facts very similar to those here: ". . . (S)uch agreements as the one in the case at bar, even if regarded as open to the objection that they pledge in advance the action of officers or stockholders, may be sustained on the ground of the

practical necessity that it would be impossible to organize a corporation if its proper management were not assured."

A competent person gainfully employed in his chosen field, will not ordinarily give up a secure position to take another with a new enterprise without some assurance as to his future. No corporation could ever be created without a preliminary agreement between the parties proposing to form it as to the mode and manner of doing so. However, when such agreements providing for the future management and control of a corporation violate the express charter or statutory provision, contemplate an illegal object, involve any fraud, oppression or wrong against other stockholders, or are made in consideration of a private benefit to the promisor, the courts will declare them invalid. Annot. 45 A.L.R. 2d 799, 811; 12 A.L.R. 1070; 45 A.L.R. 795. The promoters of a corporation occupy a relation of trust and confidence towards the corporation which they are calling into existence as well as to each other, and the law requires of them the same good faith it exacts from directors and other fiduciaries. *Goodman v. White*, 174 N.C. 399, 93 S.E. 906; 13 Am. Jur., *Corporations* §§ 126, 127. Both G.S. 55-24 and G.S. 55-73 require that the contemplated agreements be "otherwise lawful."

There is no evidence here that the contract between the plaintiff and defendants was not made in good faith or that, at the time it was made, it was not in the best interest of the corporation. *Prima facie*, it was a valid exercise of the promoters' right to contract. 13 Am. Jur., *Corporations* § 127. Since the organization of the corporation, the defendants have not owned a majority of its stock. Therefore, they could not have forced their will upon either the stockholders or the other eight directors. To remove plaintiff from the board of directors and the presidency of the corporation they ultimately required the proxies and votes of other stockholders.

The defendants' contention that the agreement was void as against public policy is not sustained. Furthermore, as parties to the agreement and recipients of the benefit of plaintiff's knowledge, experience, work, financial support, and voting support under it, they are in a poor position to assert the invalidity of the contract on the ground that it is contrary to public policy. *Bonta v. Gridley*, 78 N.Y.S. 961.

The defendants' second defense is that plaintiff's acceptance of a contract with Gateway for one year's employment instead of five was in legal effect a novation. In *Tomberlin v. Long*, 250 N.C. 640, 109 S.E. 2d 365, this Court explained the meaning of novation:

> "In this connection 'Novation may be defined as a substitution of a new contract or obligation for an old one which is thereby

extinguished * * * The essential requisites of a novation are a previous valid obligation, the agreement of all the parties to the new contract, the extinguishment of the old contract, and the validity of the new contract * * *.' 66 C.J.S. Novation Secs. 1 and 3.

" 'Novation implies the extinguishment of one obligation by the substitution of another.' (Citations omitted).

" 'Ordinarily,' as stated in *Growers Exchange v. Hartman,* 220 N.C. 30, 16 S.E. 2d 398, in opinion by *Devin, J.,* later C.J., 'in order to constitute a novation the transaction must have been so intended by the parties'."

· The agreement of November 28, 1958 must receive that construction which will best effectuate the intention of the parties. *Faust v. Rohr,* 166 N.C. 187, 81 S.E. 1096. "Where an instrument is wholly in writing and the intention of the writer must be ascertained from the document itself, the intention of the writer as well as the effect of that intention is a question of law." *Strigas v. Insurance Co.,* 236 N.C. 734, 73 S.E. 2d 788.

" 'An elementary rule invoked in the construction of contracts requires the court to ascertain the intention of the parties, and to do this note must be taken of the purpose to be accomplished, the situation of the parties when they made (the contract), and the subject-matter of the contract'." *DeBruhl v. Highway Commission,* 245 N.C. 139, 95 S.E. 2d 553.

It is difficult to follow defendants' contention that, when the corporate directors declined to give plaintiff an employment contract for longer than one year, and he accepted the one-year appointment as the best bargain he could make at the time, such acceptance released them from any further obligation to work for his election as a director and appointment as president for the ensuing four years. As it applied to the plaintiff, the obvious purpose of their agreement was to insure, as nearly as possible, his prospective position with Gateway for a five-year period before he severed his connection with Coastal Plain Life Insurance Company. When the directors declined to give him a contract for a longer period than twelve months, the only way in which the parties could then accomplish the end they had in view was to secure from the corporation four additional one-year terms for the plaintiff. There is no evidence from which it can be inferred that plaintiff ever intended to release defendants from their obligation to support him for president of the company until he had served five years, or

that defendants themselves ever thought they were released. The evidence in this case fails to establish a novation whereby Gateway's employment contract with plaintiff was substituted for his voting agreement with defendants.

The defendant's third defense is that plaintiff, by accepting the one-year contract, waived his rights under the agreement and is estopped to claim under it. The mode of performance was not the essence of the agreement, and plaintiff did not waive his rights or estop himself merely because he took from the corporation the only contract of employment obtainable. If defendants are to be released from their obligations under the agreement they must establish their fourth defense, i.e., that plaintiff failed to perform his duties as president because of alcoholism.

Any agreement to employ an individual, or to promote his continued employment, contains the implied condition that the agreement may be terminated at any time for cause. *Mansfield v. Lang, supra.* An employer undertakes to pay an employee only so long as he performs his duties with reasonable care, diligence, and attention. He may discharge an employee for just cause at any time without incurring liability therefor. This rule protects him in the efficient conduct of his business, and employment contracts thus impliedly conditioned are not against public policy. *Mt. Pleasant Coal Co. v. Watts,* 91 Ind. App. 501, 151 N.E. 7. See also 45 A.L.R. 2d 799, 820.

As justification for the abandonment of their agreement, defendants alleged that plaintiff's addiction to alcohol had caused him to neglect the business of Gateway. Plaintiff denied the allegation. It therefore became a question for the jury whether plaintiff used alcohol to an extent which would justify his discharge.

> "Confirmed habits of intoxication on the part of an employee are necessarily inconsistent with the duties of any employment and justify discharge, but the extent to which drinking of liquor or occasional excess may disqualify an employee depends upon the character of the employment." 4 Williston on Contracts, (rev. ed.) 1020; 35 Am. Jur., *Master and Servant* § 43.

The rule is well stated in 56 C.J.S., *Master and Servant* § 43(i):

> "Independently of any agreement to that effect, the master may discharge the servant when, by intoxication, he unfits himself for the full and proper discharge of his duties, and it is immaterial that at the time of the discharge the employee had quit drinking, and discharge is justifiable even when the employee is not incapacitated thereby, if his intoxication is, or may be prej-

udicial to the master's interests; and this is especially true when the employment, in its very nature, requires sobriety. The fact that liquor was drunk as medicine is no excuse for gross intoxication."

If plaintiff used alcohol to the extent that it interfered with the proper discharge of his duties as a director and president of Gateway, defendants were justified in withdrawing the support which they had agreed to give him. However, as to the first cause of action, this is an affirmative defense interposed by defendants in a suit on their individual contract with plaintiff. It is, therefore, for the jury to determine the validity of that defense. The granting of defendants' motion to nonsuit the plaintiff's first cause of action was erroneous and that ruling must be reversed.

Plaintiff's second cause of action is in tort for the wrongful interference by defendants with the contractual relation existing between him and Gateway. It is based upon *Childress v. Abeles,* 240 N.C. 667, 84 S.E. 2d 176, wherein it is stated:

". . . (T)he overwhelming weight of authority in this nation is that an action in tort lies against an outsider who knowingly, intentionally and unjustifiably induces one party to a contract to breach it to the damage of the other party. . . .

"To subject the outsider to liability for compensatory damages on account of this tort, the plaintiff must allege and prove these essential elements of the wrong: *First,* that a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person. *Second,* that the outsider had knowledge of the plaintiff's contract with the third person. *Third,* that the outsider intentionally induced the third person not to perform his contract with the plaintiff. *Fourth,* that in so doing the outsider acted without justification. *Fifth,* that the outsider's act caused the plaintiff actual damages." (All citations are omitted.)

The contract which defendants' interference caused to be terminated in *Childress* was terminable at the will of the parties. The contract here was for one year only, but it is a fair inference that both plaintiff and Gateway expected it to be renewed from year to year as long as plaintiff was able to perform his duties. The distinction between *Childress* and the case *sub judice* is that defendants here are not *outsiders.* They are all stockholders and directors of Gateway. As stockholders they had a financial interest in the corporation; as directors

they owed it fidelity and the duty to use due care in the management of its business. G.S. § 55-35. As either directors or stockholders, they were privileged purposely to cause the corporation not to renew plaintiff's contract as president if, in securing this action, they did not employ any improper means and if they acted in good faith to protect the interests of the corporation. In other words, because of their financial interest and fiduciary relationship they had a qualified privilege to interfere with contractual relations between the corporation and a third party. Restatement, *Torts,* § 769 (1939); 30 Am. Jur., *Interference* §§ 34, 37; Annot., 26 A.L.R. 2d 1227, 1270. To hold otherwise, "would tend to hinder directors of a corporation from acting on their judgment for the interest of their corporation . . ." 3 Fletcher, *Private Corporations* § 1001; *May v. Sante Fe Trail Transportation Co.,* 189 Kan. 419, 370 P. 2d 390; *Schuster v. Largman,* 318 Pa. 26, 178 A. 45.

In an article entitled Liability For Inducing a Corporation to Breach its Contract, 43 Cornell Law Quarterly, 55, 65, by Avins, we find this statement:

> "Officers, directors, agents or employees who have an interest in the activities of a corporation or the duty to advise or direct such activities should be immune from liability for inducing the corporation to breach its contract, assuming their actions are in pursuit of such interests or duties. Public policy demands that so long as these parties act in good faith and for the best interests of their corporation, they should not be deterred by the danger of personal liability. . . ."

The comment of the Georgia Court of Appeals in *Rhine v. Sanders,* 100 Ga. App. 68, 110 S.E. 2d 128 is also applicable here.

> ". . . They (defendants) had the right while acting as corporate officers and agents to counsel and advise with the defendant corporation as to the management of its affairs in all matters with which the corporation was concerned without the risk of rendering themselves personally liable to third parties for their acts in that regard if they should err. 'Any other rule would make it impossible for corporate business to be carried on at all except at the peril that every agent who advised concerning corporate action would be suable under some such allegations as are made in this complaint'."

The acts of a corporate officer in inducing his company to sever contractual relations with a third party are presumed to have been done in the interest of the corporation. "Individual liability may, however,

be imposed where his acts involve individual and separate torts distinguishable from acts solely on his employer's behalf or where his acts are performed in his own interest and adverse to that of his firm." *Rampell, Inc. v. Hyster Co.*, 148 N.Y.S. 2d 102, 153 N.Y.S. 2d 176, 165 N.Y.S. 2d 475; *Pennington Trap Rock Co. v. Pennington Quarry Co.*, 22 N.J. Misc. 318, 38 A. 2d 869; *Iverson & Co. v. Durham Mfg. Co.*, 18 Ill. App. 2d 404, 152 N.E. 2d 615.

Plaintiff's own testimony reveals that he voluntarily committed himself to the State Hospital as an inebriate in January 1960. The testimony of other witnesses for the plaintiff tended to show that it was plaintiff's use of alcohol which prompted defendants to take the action which resulted in Gateway's failure to renew his contract. Directors of an insurance company may not be subjected to liability for acting on the assumption that it might prejudice the corporation to retain as president a man with a drinking problem who had been committed to a State institution as an inebriate. Plaintiff offered no evidence tending to show that the defendants abused their privilege as directors.

The question whether plaintiff's use of alcohol had *actually* rendered him unfit to perform his duties or prejudiced the business of Gateway is not determinative of the second cause of action. An error in judgment about this would not impose liability upon the directors. The judgment of nonsuit as to the second cause of action must be sustained. *Langley v. Russell*, 218 N.C. 216, 10 S.E. 2d 721; *Herndon v. Melton*, 249 N.C. 217, 105 S.E. 2d 531; *Yancey v. Gillespie*, 242 N.C. 227, 87 S.E. 2d 210.

The plaintiff excepted to the order of the court below striking certain allegations from his complaint relative to special damages. The assignment of error based on these exceptions has been considered and it is overruled. The briefs debate the admissibility of certain evidence which the court excluded over plaintiff's objection. Without this evidence plaintiff was still entitled to go to the jury on his first cause of action, and it could not have changed the status of the second cause of action. Since these questions of evidence may not arise on the retrial, this opinion will not be lengthened with further discussion.

As to the first cause of action —
Reversed.
As to the second cause of action —
Affirmed.