## UNIVERSAL MARINE INSURANCE COMPANY, LTD.

v.

## BEACON INSURANCE COMPANY, Neil Portermain, New Orleans Reinsurers, Inc., Robert D. Schirmer, B.F.G. Toomey & Associates, Inc., B.F.G. Toomey Associates, Ltd., Barry Toomey, Cherokee Insurance Company, Ltd., Frederick B. Ingram, and Ingram Corporation.

No. ST–C–83–328–P.

United States District Court,
W.D. North Carolina,
Statesville Division.

June 1, 1984.

Hugh B. Campbell, Jr., Charlotte, N.C., Bruce M. Friedman, New York City, for plaintiff.

W. Donald Dresser, Howrey & Simon, Washington, D.C., Robert B. Cordle, Charlotte, N.C., for defendants Cherokee and Dana.

Ronald A. Jacks, Isham, Lincoln & Beale, Chicago, Ill., James E. Walker, Walker, Palmer & Miller, Charlotte, N.C., Katherine D. Woodruff, Condos, Shafer, Poynor, Ramsey, Beggs & Woodruff, Dallas, Tex., for defendants Beacon and Portermain.

Gaston H. Gage, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N.C., for defendants Frederick B. Ingram and Ingram Corp.

Raymond E. Owens, Jr., Charlotte, N.C. for defendants Robert Schirmer and New Orleans Reinsurers.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER was heard before the undersigned on May 23, 1984 in Charlotte, North Carolina. The Plaintiff was represented by Hugh B. Campbell, Jr., and Bruce M. Friedman. Beacon Insurance Company ("Beacon") and Neill Portermain were represented by Ronald A. Jacks, James E. Walker, and Katherine D. Woodruff. Cherokee Insurance Company ("Cherokee") and Dana Corporation ("Dana") were represented by W. Donald Dresser, John DeQ. Briggs, III and Robert B. Cordle. Frederick B. Ingram and Ingram Corporation were represented by Gaston H. Gage. New Orleans Reinsurers, Inc. and Robert Shirmer were represented by Raymond E. Owens. The hearing was held on motion of the Plaintiff for reconsideration of the Order filed March 2, 1984, 581 F.Supp. 1131, on motion of Dana to dismiss the crossclaim of Beacon, on motion of Frederick B. Ingram to dismiss and on motion of the Plaintiff to amend its Complaint. The Court will discuss each motion separately.

### A. The Motion of the Plaintiff to Amend its Complaint

At the hearing the parties stated that they did not have any objection to the Plaintiff's motion to amend its Complaint. The Court, in reviewing the amended Complaint is further of the opinion that pursuant to Fed.R.Civ.P. 15(a) the Plaintiff's motion to amend its Complaint should be granted and the parties should have thirty days from the filing of this Order to respond to the amended Complaint.

### B. Motion of Frederick B. Ingram to Dismiss

At the hearing, Mr. Ingram withdrew his motion to dismiss because service was obtained on May 18, 1984. The Court is, therefore, of the opinion that Mr. Ingram should have thirty days from the filing of this Order to file his response to the pleadings.

### C. Motion of Dana to Dismiss

On March 22, 1984 Dana filed a motion to dismiss the crossclaim brought by Beacon on the ground that Beacon's claim for relief against Dana is now moot because of the payment of the disputed letters of credit into the registry of the Court. Beacon responded to Dana's motion by noting that the crossclaim alleges that Dana's actions, through its control of Cherokee, constitute tortious interference with Beacon's contractual relationship with Cherokee. Dana, evidently recognizing that the claim of tortious interference is not moot, altered its stance for dismissal by asserting that the tortious interference claim does not state a claim upon which relief can be granted. The issue before the Court is, therefore, whether the crossclaim by Beacon for tortious interference states a claim upon which relief can be granted.

Dana contends the crossclaim is insufficient because Dana is not an "outsider" and thus as a matter of law it cannot be accountable for tortious interference. Dana further contends that even if it is assumed that Dana is an outsider the advice given by Dana to Cherokee was "well-founded" and therefore the interference was not wrongful.

In determining the merits of Dana's motion to dismiss, it must be remembered that

this is a motion as to the sufficiency of the pleadings and not a motion for summary judgment. Whether the advice of Dana to Cherokee was "well-founded" is a question for the trier of fact to ultimately resolve. Therefore, Dana's opinion that its advice was not wrongful is not a sufficient basis for granting a motion to dismiss for failure to state a claim upon which relief can be granted.

■ As to Dana's contention that an insider cannot be sued for tortious interference, Dana's legal proposition is not in accordance with the law of North Carolina. The North Carolina Supreme Court held in *Wilson v. McClenny*, 262 N.C. 121, 136 S.E.2d 569 (1964) that an insider's actions are "presumed to have been done in the interest of the corporation. 'Individual liability may, however, be imposed where his acts involve individual and separate torts distinguishable from acts solely on his employer's behalf or where his acts are performed in his own interest and adverse to that of his firm.'" *Id.* at 134, 136 S.E.2d 569 (citations omitted). In the instant case, whether Dana acted in its own interest and adverse to Cherokee's interest is a question of fact and not an issue to be determined by the Court in resolving a motion to dismiss. The Court is, therefore, of the opinion that Beacon's crossclaim against Dana does state a claim upon which relief can be granted and accordingly Dana's motion to dismiss should be denied.

D. *The Motion of the Plaintiff for Reconsideration of the Order of March 2, 1984*

   I. *Grounds for Reconsideration*

■ On February 13, 14, and 15, 1984 the Court heard Cherokee's motion for a preliminary injunction prohibiting Beacon from obtaining payment of the $5,634,-750.02 ("5.6 million") held in the registry of the Court. The 5.6 million placed in the Court's registry represented the funds covered by the letters of credit issued by Cherokee for Beacon in the course of their reinsurance dealings. On the morning of the hearing, the Plaintiff filed a motion for a preliminary injunction and a constructive trust over the funds held in the Court's registry. In addition, the Plaintiff sought the Court to order Cherokee to deposit $2,854,758.98 ("2.8 million") into the 5.6 million account. The 2.8 million and the 5.6 million, totalling $8,489,509.00 ("8.5 million") equals the sum paid to Cherokee on February 10, 1984 after the New York Court denied the Plaintiff's motion for a preliminary injunction with respect to the letters of credit the Plaintiff posted on Cherokee's behalf pursuant to their reinsurance agreement.

The Court when initially confronted with the Plaintiff's motion, in the midst of the Beacon/Cherokee dispute, was of the opinion that the Plaintiff was attempting to relitigate the Plaintiff's right to enjoin payment of the letters of credit to Cherokee, a matter already denied in the courts of New York. Accordingly, by Order filed March 2, 1984 the Court denied the Plaintiff's motion on the grounds of collateral estoppel. The Plaintiff, thereafter, filed its motion for reconsideration. The memoranda submitted by the Plaintiff in support of its motion for reconsideration indicates [1] that the Plaintiff is not attempting to relitigate its right to a preliminary injunction with respect to the draw under the letters of credit. The Plaintiff instead asserts a

---

**1.** In a sense the Plaintiff is peripherally attacking the right to draw under the letters of credit by asserting Cherokee's draw, although not fraudulent, was improper and lacks good faith. This assertion in part contributed to the Court's misunderstanding of the Plaintiff's motion for a preliminary injunction and constructive trust. The distinction, however, arises from the procedural posture of the motions. To obtain injunctive relief in the New York hearing the Plaintiff needed to make a sufficient showing of fraud by Cherokee to vitiate the entire transaction. The Plaintiff failed to satisfy its burden in the New York hearing. A preliminary hearing with respect to drawing under the letters of credit, however, does not forever bar the Plaintiff from contesting Cherokee's right to payment of the letters of credit at a trial on the merits, or, as here, in a motion for a mandatory injunction requiring Cherokee to deposit 8.5 million with the Court.

right to a mandatory injunction ordering Cherokee to deposit 8.5 million with the Court because Cherokee is unjustly enriched by having the unfettered use of the 8.5 million during the pendency of this litigation. The Plaintiff further contends that the fact that Cherokee filed a crossclaim for rescission of the reinsurance contracts, the day after the New York Court denied the Plaintiff's motion for an injunction is a significant new development in the case justifying the requested mandatory injunction. The Court is, therefore, of the opinion that as the Plaintiff's original intentions were misunderstood and thus the motion was not decided on the merits, the Court pursuant to Fed.R.Civ.P. 60 should reconsider on its merits the Plaintiff's motion for a mandatory injunction and a constructive trust.

## II. *The Merits of the Motion*

■ The Plaintiff moves the Court to order Cherokee to deposit 8.5 million [2] into the registry of the Court and to impress the account with a constructive trust entitling the Plaintiff to immediate payment during the pendency of this action of all interest earned.[3] The Plaintiff further asserts that the only issue before the Court with respect to the Plaintiff's motion for an injunction and a constructive trust is "upon what does Cherokee base its claim of right or entitlement to UMIC's money?". The Plaintiff's issue is erroneous. First, the Plaintiff is the moving party with respect to its motion and therefore has the burden to show its entitlement to an injunction or a constructive trust. Second, there has not been a determination that the money is UMIC's. The New York court denied the Plaintiff's motion to enjoin payment of the letters of credit. Thus, the funds represented by the letters of credit were paid to Cherokee. Granted, *after a full trial on the merits* the Plaintiff might prove Chero-

kee improperly demanded payment of the letters of credit and thus owes 8.5 million to the Plaintiff. At this stage of the proceedings, however, there has been no such determination. Actually looking at the facts as they currently exist the funds belong to Cherokee. Thus, after plodding through the artful terminology of the Plaintiff's motion the issue before the Court is whether the Plaintiff has demonstrated a right to a mandatory injunction requiring Cherokee to place 8.5 million in the registry of the Court pending a final determination of the litigation.

The Plaintiff contends it is entitled to an injunction directing Cherokee to deposit the funds into the registry of the Court because "Cherokee is presently being unjustly enriched in the amount of UMIC's letter of credit." Cherokee is allegedly being "unjustly enriched" because the funds "were not and are not available for any purpose other than to pay losses in connection with the reinsurance business" and Cherokee is not paying losses, having sought rescission of the various contracts.

Cherokee stated that it is in the process of paying losses arising out of the reinsurance contracts that do not involve Beacon. Evidently, Cherokee recently terminated Mr. Schirmer's authority to process claims and employed the firm of Ormond Re to assist Cherokee in evaluating and processing approximately 726 reinsurance contracts. Cherokee will commence paying these claims as Ormond Re makes a recommendation as to their individual propriety. The funds received under the letters of credit will be applied to the Plaintiff's percentage of those claims. At the hearing, the Plaintiff offered no evidence or even allegation to the contrary as to Cherokee's statement of payment of claims.

In light of Cherokee's evidence of payment of losses, the Plaintiff's theory of

---

**2.** The Plaintiff actually requests that the Court order Cherokee to place 8.5 million with the Court or that the Court order Cherokee to place 2.8 million more into the 5.6 million account. The intended thrust is that 8.5 million be held with the Court to equal the 8.5 million paid to Cherokee under the letters of credit. For pur-

poses of simplicity, the Court refers to the motion as a request to place 8.5 million with the Court.

**3.** At 8%, the interest in one year would be approximately $705,496.00.

"unjust enrichment" is without substance. The Plaintiff, however, argues that it is not for Cherokee to determine what claims should be paid, as that is a matter which is central to this litigation. According to the Plaintiff, if Cherokee pays the claims the Plaintiff will be irreparably harmed because funds possibly will not be available for payment to the Plaintiff if the Plaintiff is successful at the trial of this litigation. The Plaintiff, therefore, contends that the injunction should be granted to ensure that the Plaintiff can collect on its judgment if eventually successful.

The Plaintiff is in the anamalous position of relying on contradictory factual assertions in support of its motion. The Plaintiff will allegedly be irreparably harmed if Cherokee pays the claims. At the same time the ground justifying the injunction is Cherokee's failure to make payments. The Plaintiff's theory further places Cherokee between a rock and a hard place. If Cherokee fails to pay the claims then it is being "unjustly enriched" and an injunction should issue. If Cherokee pays the claims then the Plaintiff will be irreparably harmed and an injunction should issue. These contradictions in the Plaintiff's argument demonstrate that the actual reason the Plaintiff seeks this injunction is to *guarantee* that if a judgment is rendered for the Plaintiff the funds will be available to satisfy the judgment.

The Plaintiff contends that equity demands the funds be placed with the Court because there is a possibility the funds will be unavailable by the trial of this action. The Plaintiff, however, failed to present any evidence that Cherokee is in a precarious financial condition, that Cherokee is sequestering assets to defraud creditors, that Cherokee will pay claims exceeding its authority, or even that Cherokee is acting improvidently in the payment of claims. The only allegations before the Court is that Cherokee has engaged an established reinsurance intermediary to evaluate Cherokee's obligations on the claims and Cherokee will pay the claims it has an obligation to pay. The Court cannot assume, absent evidence to the contrary, that in assessing and paying claims, Cherokee would take actions to contribute to its own financial downfall.

There is simply an absence of any equitable factors justifying an injunction mandating that Cherokee deposit 8.5 million with the Court during the pendency of this action. In fact, the existing equitable factors weigh heavily against issuing the injunction. If an injunction is granted Cherokee will not be able to process payment of the 726 contracts. Cherokee's default will probably generate a multitude of other lawsuits or claims with respect to this already complex litigation. Thus, the interest of the public is better served by not issuing the injunction, which allows the lawful claimants to be paid in due course. In addition, the Plaintiff admits that it has already ceased doing business. Placing the funds with the Court will not revive the Plaintiff's operations. If the injunction is issued, however, Cherokee's business existence would become almost impossible. Thus, instead of having one defunct reinsurer in this litigation, there will be two. Two financially unstable reinsurers is of no benefit to the litigants or the public.

In conclusion, stripping the Plaintiff's arguments to their true substance, the Court is faced, as in most contract disputes, with two litigants disputing ownership of one asset. One litigant has actual possession of the asset and the other litigant seeks possession. The lawsuit is filed to determine who is entitled to the asset. In this case, however, instead of waiting for a final determination on the merits, the Plaintiff seeks to force Cherokee to place the disputed funds with the Court during the pendency of the action with the accrued interest to be immediately payable to the Plaintiff. The only ground for this mandatory relief is a speculative assertion that Cherokee might become judgment proof. If the Court was to order this type of mandatory injunction, in the absence of any equitable factors, then everytime a financial dispute is litigated a party could demand that the possessor of the funds relinquish possession during the pendency of

the action. In effect, the Court would be ordering surety bonds to be posted during the pendency of any litigation, before there has been any determination that the moving party is entitled to relief. Such an effect would only serve to increase the burdens of litigation.

The only unique factor in this litigation is that the asset in dispute is of a value higher than normally encountered in litigation. The value of the asset, however, does not alter the legal or equitable factors that must be shown to justify an injunction. The equitable factors in the instant case weigh heavily against the issuance of the injunction. The Court is, therefore, of the opinion that a preliminary injunction should not be issued and accordingly the Plaintiff's motion for reconsideration should be denied. The Plaintiff, like all other litigants, must wait for its day in court.

IT IS, THEREFORE, ORDERED that:

(1) The Plaintiff's motion to amend its Complaint is *GRANTED;*

(2) The parties have thirty (30) days from the filing of this Order to respond to the amended Complaint;

(3) Frederick B. Ingram has thirty (30) days from the filing of this Order to file his response to the pertinent pleadings;

(4) The motion of Dana to dismiss is *DENIED;* and

(5) The motion of the Plaintiff for reconsideration of the Order of March 2, 1984 is *DENIED.*