CLARE R. HEATER v. JOSEPH R. HEATER

No. 8028DC1221

(Filed 7 July 1981)

**Husband and Wife § 11.2 — separation agreement — alimony provision — meaning of "then gross income"**

Where a separation agreement required the husband to pay the wife $25,000 per year in alimony for the first three years, payable in equal monthly installments, and thereafter to pay "an amount equivalent to thirty percent (30%) of the Husband's then gross income, which shall be payable in equal monthly installments during the fourth year," the phrase "then gross income" meant the husband's gross income for the previous year rather than current monthly earnings, and after the first three years the husband was required to pay the wife in monthly installments a yearly sum equivalent to thirty percent of his gross income for the immediately preceding year.

APPEAL by plaintiff from *Israel, Judge.* Judgment entered 11 August 1980 in District Court, BUNCOMBE County. Heard in the Court of Appeals 2 June 1981.

This is an action by plaintiff for arrearages due under the terms of a separation agreement with defendant and for a decree of specific performance of the agreement by defendant. Plaintiff also seeks an interpretation of the provisions of the agreement concerning support and maintenance payments. Defendant denies that he has breached the contract, but admits there is a dispute over the interpretation of the provisions of the agreement regarding support. The court heard the case without a jury and entered judgment finding facts and making conclusions of law. By the judgment the court resolved the interpretation question against plaintiff, and she appeals.

*Riddle, Shackelford & Hyler, by Robert E. Riddle, for plaintiff appellant.*

*Erwin, Winner & Smathers, by Dennis J. Winner, for defendant appellee.*

MARTIN (Harry C.) Judge.

The relevant portions of the disputed provision of the agreement are:

> 23.1 As alimony for her support and maintenance, the Husband shall pay to the Wife the sum of Twenty-Five Thousand Dollars ($25,000.00) per year as alimony, payable in equal monthly payments of Two Thousand Eighty—Three and 33/100 Dollars ($2,083.33), commencing on the first day of each succeeding month following the execution of this Agreement, and continuing thereafter for a period of three years. That at the expiration of the third year, said amount shall be adjusted and shall be an amount equivalent to thirty percent (30%) of the Husband's then gross income, which shall be payable in equal monthly installments during the fourth year.

In each succeeding year the percentage payable to the plaintiff is to be reduced until the support requirements terminate at the end of the eighth year following the execution of the agreement.

The dispute revolves around the phrase "then gross income," plaintiff arguing that it means defendant's gross income for the previous year, and defendant contending that it means current earnings. The trial court concluded that the provision meant "current earnings," and, based thereon, held that defendant was not

in arrears in his support payments. Plaintiff assigns this conclusion as error, and we agree.

Plaintiff's evidence with respect to the contested provision is largely from defendant, whom plaintiff called as an adverse witness. He testified:

> On the first of December, 1979 I made a payment to Mrs. Heater in the amount of $1,375.00. That figure was based upon my contractual salary with Sylvania and the non-compete agreement. The contractual salary was spelled out in the original employment contracts. I do not mean a percentage of that; the salary for the first year was $35,000.00. The salary for the second year was $40,000.00. The salary for the third year was $45,000.00. And then there was $10,000.00 per year paid for non-compete. I took an annual rate of forty-five, plus the ten on December 1st, which is my income for that month, and sent thirty percent (30%) of that.

> Yes I based the thirty percent on the annual rate for the year 1979; using the 1979 income as the basis upon which to make the December 1979 payment. My contract of separation was signed on November 26, 1976. I made my first payment in December of 1976. I made my last payment under that three years later in November of 1979.

> And my first payment for the next year, the fourth year, was made on December 1st.

> To arrive at what I should pay for the December payment I used the 1979 previous twelve months plus one month of 1978. It was my understanding at that time that that was the appropriate way to calculate the percentage arrangement that was to begin December 1, 1979 since the contracts with Sylvania were presented to both attorneys before we signed.

> My Sylvania job actually terminated on December 31, 1979. In January of 1980 I made a payment to Mrs. Heater in the amount of $1,375.00. I computed that on the same formula of thirty percent of my immediate preceding twelve months income.

> . . . .

RECROSS EXAMINATION By Mr. Winner:

I based my payments on December 1st and January 1st of thirty percent of the month of my earnings for the month before.

FURTHER EXAMINATION By Mr. Riddle:

I said months. I didn't mean a year's salary; just the month before I had income and I paid. My month's salary in the December of 1979 was twelve divided into forty-five thousand, whatever that comes out to be. What I actually received in December of 1979 was twelve divided into forty-five thousand and add $833.33; I just can't do that in my head.

That is what I received during the month of December. I am saying that I based it on earnings in December of 1/12 of $45,000.00, plus 1/12 of $10,000.00.

I used the annual salary as a salary figure to go by; that's how much I earned, that month.

Mrs. Heater testified:

It was my understanding, with respect to the separation agreement that the payments were based upon previous year's income, a percentage of that, I was trying to get some idea so I would know how to schedule my budget.

When we resolved this matter we talked in terms of annual income or previous year income rather than monthly income.

This evidence indicates that defendant made the December 1979 and January 1980 payments based upon his income for the preceding year. Evidence of statements and conduct by the parties after executing a contract is admissible to show intent and meaning of the parties. *Cordaro v. Singleton,* 31 N.C. App. 476, 229 S.E. 2d 707 (1976). "The conduct of the parties in dealing with the contract indicating the manner in which they themselves construe it is important, sometimes said to be controlling in its construction by the court." *Bank v. Supply Co.,* 226 N.C. 416, 432, 38 S.E. 2d 503, 514 (1946). The opinion of the great Chief Justice Stacy in *Cole v. Fibre Co.,* 200 N.C. 484, 157 S.E. 857 (1931), expounds on this rule and, in summation, reads:

Finally, we may safely say that in the construction of contracts, which presents some of the most difficult problems known to the law, no court can go far wrong by adopting the *ante litem motam* practical interpretation of the parties, for they are presumed to know best what was meant by the terms used in their engagements.

*Id.* at 488, 157 S.E. at 859.

The language of the agreement itself supports plaintiff's argument: "Husband shall pay to the Wife the sum of Twenty-Five Thousand Dollars ($25,000.00) per year as alimony, payable in equal monthly payments . . .." This obligates defendant to pay a yearly amount in monthly installments. After three years, the yearly amount is to be adjusted and "shall be an amount equivalent to thirty percent (30%) of the Husband's then gross income, which shall be payable in equal monthly installments during the . . . year." It clearly appears that it was the intent of the parties that defendant pay a yearly amount of alimony in monthly installments. Plaintiff was to receive $25,000 a year for each of the first three years, and thereafter the yearly amount was to be determined at the end of each year on the basis of a percentage of defendant's gross income for the immediately preceding year. This, in turn, was payable monthly. Defendant himself followed this interpretation of the contract, as shown from his testimony. He made the December 1979 and January 1980 payments based upon "the formula of thirty percent of my immediate preceding twelve months income," paying plaintiff one-twelfth of that sum. Defendant's contention that each monthly payment after the three-year period is to be based upon a percentage of defendant's gross income for the preceding month would vitiate the express requirement that defendant pay a yearly sum to plaintiff as alimony in equal monthly installments. It is to be noted that defendant is not obligated to pay permanent alimony; his responsibility ends after eight years.

Conclusions of law must be supported by findings of fact and the evidence. *Brown v. Board of Education,* 269 N.C. 667, 153 S.E. 2d 335 (1967); *In re Vinson,* 42 N.C. App. 28, 255 S.E. 2d 644 (1979). We hold that the findings of fact and evidence do not support the challenged conclusion of law. To the contrary, the evidence supports the conclusion that after the first three years of the con-

tract, defendant was obligated to pay to plaintiff as alimony a yearly sum equivalent to thirty percent of his gross income for the immediately preceding year, in monthly installments. For this reason the judgment must be vacated and the cause remanded for further proceedings not inconsistent with this opinion. In view of this disposition of the appeal, we do not consider it necessary to pass upon plaintiff's argument concerning specific performance of the separation agreement.

Vacated and remanded.

Judges HEDRICK and WELLS concur.