RICHARD DALE WALKER v. GOODSON FARMS, INC., AND J. MICHAEL GOODSON, AND EDWARD F. MOORE

No. 874SC1020

(Filed 21 June 1988)

1. **Master and Servant § 8— wrongful discharge action—creation of contract**

   The jury in a wrongful discharge action was entitled to find the creation of a valid and enforceable contract where, although a letter setting out the terms of agreement was not signed by plaintiff and there was a subsequent letter which defendants alleged was a counteroffer, plaintiff worked two and a half years and received salary and benefits as set out in the original letter.

2. **Master and Servant § 8; Contracts § 2— wrongful discharge—existence of employment contract—failure to execute written contract**

   The parties' failure to execute a written employment contract did not preclude the creation of an enforceable agreement or discharge defendants from their guarantor liability.

3. **Master and Servant § 10.1— wrongful discharge—drinking and advances of funds—not just cause for discharge**

   The trial court did not err in a wrongful discharge action by denying defendants' motions to dismiss and for judgment n.o.v. where there was sufficient evidence for the jury to determine that plaintiff's use of alcohol did not interfere with his work so as to justify his discharge, and the jury was also entitled to have found that plaintiff's use of company funds did not constitute just cause for discharge because plaintiff made advances from company funds in the course and interest of operating the business and not for his own benefit.

**4. Appeal and Error § 24— wrongful discharge action—alleged error in instructions—waived by failure to object**

Defendants in a wrongful discharge action waived their right to assert on appeal errors in the court's instructions by failing to object before the jury retired. Rule 10(b)(2) of the North Carolina Rules of App. Procedure.

APPEAL by defendants from *Lake, I. Beverly, Jr., Judge.* Judgment entered on the verdict out of session, out of district and out of county 16 April 1987. Heard in the Court of Appeals 29 March 1988.

This appeal grows out of plaintiff's action commenced 24 January 1986 for breach of an employment contract. In his complaint, plaintiff alleged that defendant Goodson Farms, Inc. (GFI), through defendant J. Michael Goodson (Goodson), majority shareholder of GFI, breached plaintiff's five-year employment contract by terminating plaintiff's position as general farm manager prior to the expiration of the five-year term. Plaintiff also alleged in his complaint that defendants Goodson and Edward K. Moore (Moore) had breached their promises of guaranty on the employment contract. Moore owned part of the farmland leased to GFI.

The matter was tried before a jury at the 6 April 1987 civil session of Sampson County Superior Court. The evidence tended to show the following: In 1980-81, defendant Goodson, then president and principal shareholder of GFI, first contacted plaintiff at plaintiff's home in Louisiana regarding potential employment with the Goodson Farms in North Carolina. During 1982-83, Goodson repeatedly called on plaintiff to leave his then position as a farm general manager and come to work for Goodson. At one point during this recruiting period, Goodson told plaintiff that he would offer a five-year term employment contract. Plaintiff testified that because he held reservations about GFI's financial stability, he had bargained for a long-term contract for purposes of his own financial assurance. In addition, Goodson told plaintiff that the contract would be personally guaranteed by him and defendant Moore.

In late 1982 and early 1983, at Goodson's request, plaintiff met with Goodson, Moore and Moore's accountant at Goodson's New York City office. The parties again discussed a five-year employment contract and the corresponding guaranties of Goodson and Moore. By way of assuring plaintiff of the strength of

Moore's guaranty, Moore's accountant provided plaintiff with a full report of Moore's holdings, assets and liabilities, and tax return information. Moore also interviewed plaintiff for four hours at the meeting to learn more about plaintiff's experience as a farm manager. Moore told plaintiff that he would be willing to guarantee an employment contract for GFI.

Shortly after returning from New York, plaintiff received an unexecuted letter dated 31 January 1983 from Goodson, which provided in pertinent part:

Dear Dale:

This letter is to confirm our understanding covering your employment with Goodson Farms Inc. (GFI). You will be in charge of all phases of farming and farm related activities of GFI and/or its affiliates. Your title will be President of the corporation and you will serve as a director. I will remain as Chairman of the Board of GFI's Board of Directors.

In addition to the above, our commitment to you and your commitment to GFI is as follows:

1. In the first year of employment ending December 31, 1983, you will be paid at the annual rate on a monthly basis of $60,000 per year ($5,000 per month) beginning February 1, 1983. In addition to your salary, which due to the date you are beginning employment will only be $55,000, you will receive an automatic bonus on December 31 of $20,000 regardless of the level of profitability of the farm operation. In addition, if the farm is profitable, you will receive an additional $20,000 bonus provided that the bonus will be no greater than the farm's profits if the pre-tax profits are less than $20,000.

2. In the years beginning January 1, 1984 and ending on December 31, 1987 you will be paid on a monthly basis on an annual rate of pay of $80,000 per year and will be entitled to a cash bonus of $20,000 in any year in which the operations of the farm show a pre-tax profit provided that the cash bonus not exceed the pre-tax profits for that year. . . .

. . .

4. GFI will maintain term life insurance with your estate as the beneficiary equal to three times your base salary on an annual basis.

. . .

6. You will receive or be entitled to a paid vacation of two weeks per year and/or such additional time at your discretion as you may be able to take, provided that the farm is being properly supervised and maintained during that time. This vacation provision is noncumulative.

. . .

8. If Walker breaches the contract by terminating his employment prior to the expiration of the five year period, the liquidated damages for said breach will be $100,000 due and payable immediately to GFI.

9. At the end of Walker's contract, it is hereby stipulated and agreed that Walker will not compete in the strawberry plant business for three years with GFI by growing and offering for sale any variety of plants grown during the preceding five year period of time or contracting directly or indirectly any customers to whom plants were sold during said five year period of time. If Walker leaves GFI's employment prior to the expiration of the five year period, then the noncompete period will be for three full years beginning on January 1, of the first year after Walker leaves GFI's employment.

. . .

Whereas the above paragraphs correctly set forth the understanding of employment of Dale Walker with Goodson Farms Inc. for good and valuable consideration it is agreed between and among the parties:

_____

Richard D. Walker

_____

Goodson Farms Inc.

And the foregoing terms of employment and mutual covenants are hereby guaranteed by:

              J. Michael Goodson
              Individually

              Edward F. Moore
              Individually

On plaintiff's request for clarification of the letter, Goodson responded with a letter dated 19 February 1983. The relevant portions of that letter are as follows:

Dear Dale:

This letter is being written for the purpose of further defining the terms that were implicit in our January 31, 1983 agreement, as well as for the purpose of changing the effective date that you will begin employment.

. . .

Paragraph 8 of J-31 talks in terms of termination remedies available to GFI. Implicit in this contract, although not set forth in paragraph 8, is the right of either party to terminate this contract for cause, irrespective of the provisions set forth in the contract. Many factors come into play in determining what is cause, and I will not undertake to define cause in this agreement.

. . .

Although GFI has no written set of accounting policies, it has been GFI's practice not to incur any expenses in connection with my involvement or that of any related family member or corporate affiliate in connection with GFI. Accordingly, during the five year contract contemplated under J-31, there will be no such charges except and without your prior consent. If the above properly sets forth your understanding of our conversation today concerning our mutual understanding of the interpretation of the contract, with various factual modifications to bring the contract current,

kindly indicate same by signing the enclosed copy of this let-
ter and return it to me.

. . .

After receiving the 19 February letter, plaintiff drafted
another letter dated 25 February 1983 in which he purportedly
accepted Goodson's 31 January letter with two exceptions. Plain-
tiff proposed the insertion of a clear statement setting out the
contract's five-year term and a statement regarding plaintiff's ti-
tle and duties. Secondly, plaintiff requested the deletion of
Paragraph #8 in the 31 January letter which referred to liq-
uidated damages and asked that the general principles of law
relating to termination remedies be applied in the event a legal
resolution should become necessary.

Plaintiff closed this letter with the following:

. . . With these minor exceptions, and upon their ap-
proval, I agree to the contract provisions as set forth in the
two (2) letters above described and I will execute my signa-
ture thereon upon the affixation of the signature of yourself,
both individually and as President of GFI, as well as that of
Mr. Edward F. Moore.

On the 26th or 27th of February, plaintiff met Goodson in
Raleigh, North Carolina. While driving from Raleigh to Turkey,
North Carolina, the location of the Goodson Farms, plaintiff gave
Goodson the 25 February letter and Goodson gave plaintiff a copy
of the 31 January letter, this time signed by both Goodson and
Moore as guarantors. Goodson had also signed as president on
behalf of GFI. Plaintiff never signed the 31 January letter.
Following this exchange, with nothing further stated between the
parties, plaintiff began work as president and general manager
for GFI on 1 March 1983.

Goodson testified, however, that he and plaintiff never
discussed the 25 February letter nor did Goodson ever agree to
the proposed changes contained therein.

From March 1983 through November 1985, just before plain-
tiff's discharge from employment, plaintiff performed his job as
farm manager and was paid a salary in the amount and manner
described in the 31 January and 19 February letters; he was paid

the bonuses and the insurance benefits as provided for in the letters and utilized the vacation time mentioned in the letters.

Goodson testified that during plaintiff's first year of work, Goodson became concerned with plaintiff's "drinking problem." The evidence is undisputed that plaintiff drank alcohol while at work and on GFI property; however, the testimony of the parties' several witnesses is conflicting as to the effects of plaintiff's drinking on his work. Some witnesses testified that his use of alcohol adversely affected his work. Others, especially Thomas Stanley and Sam Mathis, who had worked closely with plaintiff throughout the two years indicated that plaintiff's work was unaffected. The witnesses generally testified that plaintiff tended to work long hours, worked well with others, and possessed good managerial skills.

In October 1985, Goodson called plaintiff and Assistant Manager Clayton Murphy to a meeting in his New York office. Plaintiff's evidence showed that Goodson informed him at the meeting that all GFI salaries were to be cut 50% to save the corporation money. Plaintiff testified that Goodson had never complained to him about his drinking or work performance. Goodson, however, claimed that he had confronted plaintiff about his drinking and was using the salary cut as a "motivational tool."

Plaintiff testified that when he later complained of the salary cut, he learned through his attorney that his employment had been terminated. In his testimony at trial, Goodson indicated that he thought plaintiff had resigned.

Goodson also testified to having given plaintiff full managerial power at GFI. Although specific guidelines or rules were not issued or in evidence, plaintiff was given essentially carte blanche to run the GFI operations, including control over its finances. Occasionally, in the course of the farm's operations, plaintiff was required to make certain cash advances from GFI funds. Several of these advances were not recovered. The evidence at trial showed that these advances were made on behalf of the business and not for plaintiff's personal gain.

Defendants moved for a directed verdict at the close of plaintiff's evidence and all the evidence. The trial court denied both motions and submitted the following issues to the jury:

1. Was there a contract of employment for a definite period of time between the plaintiff, Richard Dale Walker, and the defendant, Goodson Farms, Inc.?

ANSWER: Yes.

2. Was the plaintiff, Richard Dale Walker, discharged from his employment or terminated by the defendant, Goodson Farms, Inc.?

ANSWER: Yes.

3. Was the discharge of the plaintiff, Richard Dale Walker, without just cause?

ANSWER: Yes.

4. Did the defendant, Edward F. Moore, sign or enter into any contract or agreement of employment between the plaintiff, Richard Dale Walker, and the defendant, Goodson Farms, Inc., as a guaranty or guarantor on the plaintiff's behalf?

ANSWER: Yes.

5. What amount of damages, if any, is the plaintiff, Richard Dale Walker, entitled to recover?

ANSWER: $ Amount Equal To Full Coverage of Contract $176,000.00.

.    .    .

From the trial court's denial of their motions for directed verdict and judgment notwithstanding the verdict, defendants appeal.

*Timothy W. Howard for plaintiff-appellee.*

*Ward and Smith, P.A., by Michael P. Flanagan and Douglas K. Barth, for defendants-appellants.*

WELLS, Judge.

The threshold issue in this appeal is whether there existed sufficient evidence to support the jury's finding of an employment contract for a five-year term. Our review of the evidence leads us

to conclude that the jury was entitled to find the creation of a valid and enforceable contract based upon the terms of the 31 January letter.

[1] In their first argument, defendants contend that because plaintiff failed to show the legal formation of a contract of employment, the trial court erred in denying defendants' motions for directed verdict and judgment notwithstanding the verdict.

A motion for judgment notwithstanding the verdict under G.S. § 1A-1, Rule 50(b) of the North Carolina Rules of Civil Procedure constitutes a renewal of a motion for directed verdict and requires the trial court to view all the evidence and conflicts therein in the light most favorable to the nonmovant. *Penley v. Penley,* 314 N.C. 1, 332 S.E. 2d 51 (1985); *Northern National Life v. Lacy J. Miller Machine,* 311 N.C. 62, 316 S.E. 2d 256 (1984). Motions for directed verdict and judgment notwithstanding the verdict should be granted only when the evidence is insufficient to support a verdict in the nonmovant's favor. *Penley, supra.* The evidence in the present case, when viewed in the light most favorable to plaintiff, was sufficient to support the verdict.

Defendants rely on our Supreme Court's decision in *Normile v. Miller and Segal v. Miller,* 313 N.C. 98, 326 S.E. 2d 11 (1985) to support their argument that plaintiff failed to show that an employment contract had been formed. A valid contract may arise only where the parties assent and their minds meet as to all terms. *Goeckel v. Stokely,* 236 N.C. 604, 73 S.E. 2d 618 (1952). This meeting of the minds requires an offer and acceptance of the same terms. If, in his acceptance, the offeree attempts to change the terms of the offer, such constitutes a counter-proposal and thereby a rejection of the initial offer. *Normile, supra; Richardson v. Storage Co.,* 223 N.C. 344, 26 S.E. 2d 897 (1943). Defendants argue that because the 31 January letter was not signed and accepted by plaintiff and because the 25 February letter acted as a counteroffer to the January letter, a contract was never formed. However, the present case is distinguishable from *Normile.*

In the construction of a contract, the parties' intentions control, *Cordaro v. Singleton,* 31 N.C. App. 476, 229 S.E. 2d 707 (1976) and their intentions may be discerned from both their writings and actions. *Bank v. Supply Co.,* 226 N.C. 416, 38 S.E. 2d 503 (1946); *Zinn v. Walker,* 87 N.C. App. 325, 361 S.E. 2d 314 (1987);

*Heater v. Heater*, 53 N.C. App. 101, 280 S.E. 2d 19 (1981). Unlike *Normile*, the parties in the present case affirmatively acted upon their negotiations which tended to show the formation of an agreement. Plaintiff worked for defendants for two and one-half years and defendants paid plaintiff according to the 31 January letter. In *Normile*, however, there was no subsequent conduct of the parties by which their intentions regarding the sales contracts might have been determined. Instead, the issue became one of determining which of the sales contracts had actually been accepted and incorporated into an enforceable contract. The *Normile* court therefore was never required to consider and construe the meaning of the parties' conduct which makes the decision there inapplicable to the present case.

Rather, the case before us presents facts not unlike those in our recent decision in *Zinn v. Walker, supra*, where this Court held as enforceable preliminary agreements to agree, the terms of which agreements apparently directed the parties' actions. The decisive factor in *Zinn*, and in the present case, was the parties' conduct and the interpretation they gave to their negotiations. That plaintiff in the case *sub judice* worked as a general manager for two and one-half years and received a salary and insurance benefits as set out in the 31 January letter was persuasive and convincing evidence of a contract based on that letter.

[2] Defendants also contend that because the parties had intended to place the terms of their negotiations in writing, their having failed to consummate such a written agreement precludes the finding of a contract. Likewise, they argue, if there was no contract for employment, defendants Goodson and Moore could not have been guarantors on the contract. We disagree.

We have earlier held in this case that a valid and enforceable employment contract was formed based on the terms of the 31 January letter. The parties' failure to have drafted a final written agreement, while perhaps relevant, is not determinative of the issue. *See Zinn v. Walker, supra.* We therefore hold that the parties' failure to execute a written contract does not preclude the creation of an enforceable agreement nor does it discharge defendants from their guarantor liability.

[3] In their second argument, defendants assign as error the trial court's denial of their motions to dismiss and for judgment

notwithstanding the verdict on the issue of plaintiff's discharge from employment. Defendants claim that even if a valid employment agreement were found, plaintiff's drinking on the job and making cash advances from GFI funds gave rise to just cause for terminating his employment.

Defendants urge us to hold as a matter of law that habitual drinking of alcohol on an employer's premises during working hours constitutes "just cause" for discharge. In support of their assertion, defendants rely on our decision in *Hester v. Hanes Knitwear*, 61 N.C. App. 730, 301 S.E. 2d 508 (1983), where we addressed the question of whether an employee's use of marijuana at work in violation of the employer's rules constituted ". . . misconduct connected with work" under G.S. § 96-14(2). Although we held that the employee's use of marijuana at work did constitute "misconduct," our holding there should not be interpreted to have addressed the question of "just cause" for terminating an employment contract, and that decision is therefore not controlling here.

We instead look to our Supreme Court's decision in *Wilson v. McClenny*, 262 N.C. 121, 136 S.E. 2d 569 (1964), where the Court held that an employee's use of alcohol ". . . to the extent that it interfere[s] with the proper discharge of his duties . . ." may constitute just cause for termination of the employment contract. The Court also made clear that determination of whether the employee's use of alcohol in fact interfered with his work was a question for the jury. *Id.*

In the present case, the jury having heard all the evidence determined that plaintiff's use of alcohol did not so interfere with his work as to justify his discharge. Given the testimony of several witnesses who observed no adverse effects in plaintiff's work, we find there existed sufficient competent evidence to support the jury's verdict.

The jury was also unpersuaded that plaintiff's cash advances from GFI funds gave rise to "just cause" for discharge. The evidence showed that plaintiff made such advances in the course and interest of operating GFI and not for his own benefit. The jury was therefore entitled to have found that plaintiff's use of GFI funds did not constitute "just cause" for discharge from his employment. Accordingly, we overrule defendants' second argument and first, second and third assignments of error.

**[4]** Finally, defendants make a complicated argument concerning errors contained in the trial court's instructions relating to offer, acceptance, and counteroffers; however, as defendants failed to object to the instruction before the jury retired and thereby properly preserve the exception for appeal as required by Rule 10(b)(2) of the Rules of Appellate Procedure, defendants have waived their right to assert this issue on appeal. *Donavant v. Hudspeth*, 318 N.C. 1, 347 S.E. 2d 797 (1986).

For the reasons stated, we find no error in the trial.

No error.

Judges PARKER and ORR concur.