IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-4

Filed: 6 October 2020

New Hanover County, No. 18-E-144

IN THE MATTER OF THE ESTATE OF ANDREW ROBERT CRACKER

Appeal by Petitioner Pennaritta C. Cracker from order entered 26 June 2019 by Judge C.W. Bragg in New Hanover County Superior Court. Heard in the Court of Appeals 26 August 2020.

> *Ward and Smith, P.A., by Jenna Fruechtenicht Butler and Christopher S. Edwards, for Appellant Pennaritta C. Cracker.*
>
> *Block, Crouch, Keeter, Behm & Sayed, LLP, by Colin J. Tarrant, for Appellee Andrew John Edward Cracker.*

COLLINS, Judge.

Pennaritta C. Cracker ("Petitioner") appeals from an order denying her claim to an elective share of the estate of her late husband, Andrew Robert Cracker ("Decedent"). Petitioner argues that the trial court erred because she never signed an express waiver of her elective share right, and a waiver cannot be inferred from the terms of Petitioner and Decedent's separation agreement. We affirm the order.

## I. Procedural History and Factual Background

Petitioner and Decedent married in July 1990 and separated in November 2014. On 4 December 2014, Petitioner filed a complaint seeking post-separation support, alimony, equitable distribution, and attorney's fees. Following a settlement

conference, Petitioner and Decedent (the "parties") executed a Mediated Settlement Agreement and Consent Judgment ("MSA"), which the trial court entered on 20 August 2015.

The parties stipulated that the MSA memorialized their agreement. The trial court found that the parties had "agreed to resolve all pending issues"; the MSA was "calculated to finally resolve their financial claims against one another"; and that "[t]he parties waive[d] further findings of fact." The MSA ordered Decedent to deed certain real property to Petitioner in exchange for Petitioner's assumption and payment of all debts associated with the property. It also provided that Petitioner and Decedent would have as their "sole and separate property all household furniture and other personal property" at the time in their possession. Additionally, each party "acknowledge[d] sole ownership in the other" of certain personal belongings owned prior to the marriage, inherited during the marriage, or given or loaned to the party by a relative. Petitioner and Decedent each received a vehicle as "sole and separate property." Each party would be responsible for the debts associated with the assets distributed to him or her and for the debts in his or her individual name. Petitioner and Decedent retained bank accounts in their respective names as "sole and separate property," and identified retirement accounts and joint bank accounts were distributed to either Petitioner or Decedent. The MSA specified that the parties had divided all intangible property such as stocks and bonds to their satisfaction, and

provided that "neither party shall make any claim against the other for any intangible personal property in the name, possession or control of the other."

Petitioner also "dismisse[d] with prejudice any claim for post-separation support, alimony and attorneys fees associated with said claims." Decedent was required to make payments of $6,900 to Petitioner in September and October of 2015. The MSA required Decedent to maintain a supplemental health insurance policy covering Petitioner at her cost. At the conclusion of the MSA, the parties agreed that it "contains the entire understanding of the parties, and there are no representations, warranties, covenants, or undertakings other than those expressly set forth herein."

On 13 June 2017, Decedent executed his Last Will and Testament ("Will"). He died on 26 January 2018. At the time of Decedent's death, he and Petitioner were still married but remained separated. The Will was admitted to probate on 5 February 2018. Decedent's Will named his son, Andrew John Edward Cracker, as executor of the estate. The Will devised Decedent's entire estate to his two children. The Definitions section of the Will provided, in relevant part:

> As of the execution of this Will, I am physically separated from my spouse, Pennaritta Cherry Cracker. She and I have executed a Mediated Settlement Agreement and Consent Judgment on marital property that contains a complete and total waiver of alimony which includes a waiver of any claim for post separation support, alimony and attorney's fees associated with any claims that were raised in our separation. In addition, both Pennaritta C. Cracker and myself have executed a Release of Estate and

Inheritance Rights, a copy of which is attached as Exhibit A and incorporated herein by reference to this Will.

No release was attached to the Will.

On 30 July 2018, Petitioner timely filed a claim for an elective share of Decedent's estate under N.C. Gen. Stat. § 30-3.1(a). The executor objected to this claim, arguing that, under N.C. Gen. Stat. § 30-3.6, the claim was barred because Petitioner had waived her elective share right in the terms of the MSA. After a hearing, by written order entered 28 November 2018, the clerk determined that the duly executed MSA waived Petitioner's right to claim any interest in Decedent's property after death.

The Clerk made the following relevant findings of fact:[1]

> 5. That the Decedent and [Petitioner] entered into a Mediated Settlement Agreement and Consent Judgment on August 20, 2015, wherein the parties settled issues of equitable distribution and alimony and the same is referenced in Decedent's Last Will and Testament;
>
> . . . .
>
> 1. That the distribution of assets between the Decedent and [Petitioner] under the Mediated Settlement Agreement and Consent Judgment stated that the parties shall have this property as his or her "sole and separate property."
>
> 2. That by execution of the Mediated Settlement Agreement and Consent Judgment both parties expressly waived any future claims "against the other for any

---

[1] The order's Conclusions of Law numbers 1, 2, and 3 are more accurately categorized as findings of fact. *Dunevant v. Dunevant*, 142 N.C. App. 169, 173, 542 S.E.2d 242, 245 (2001) ("[A] pronouncement by the trial court which does not require the employment of legal principles will be treated as a finding of fact, regardless of how it is denominated in the court's order.").

> intangible personal property in the name, possession or control of the other."
>
> 3. That the Mediated Settlement Agreement and Consent Judgment further states that "Each party hereby transfers, assigns and relinquishes unto the other party any and all right, title or interest he or she may have in the furnishings or other personal property presently in the possession of the other party, except as otherwise designated herein."

The clerk thus denied Petitioner's claim for an elective share. Petitioner timely appealed this order to superior court.

After a hearing, by written order entered 26 June 2019, the court concluded that the clerk's decision was correct based on "the Separation Agreement as well as the language of the Will, indicating clearly that Decedent's intent was for his estate to pass only to his children and to exclude Petitioner[;]" the clerk's findings of fact were supported by sufficient evidence; the conclusions of law were supported by the findings of fact; and the denial of Petitioner's claim was consistent with the conclusions of law and applicable law. The superior court thus affirmed the clerk's order. Petitioner timely appealed to this Court.

## II. Discussion

### A. *Waiver of Elective Share*

Petitioner argues that she is statutorily entitled to an elective share of Decedent's estate because she did not waive this entitlement in a signed writing as required by N.C. Gen. Stat. § 30-3.6(a).

- 5 -

On appeal of a probate matter decided by the clerk, the superior court reviews the clerk's order to determine "(1) [w]hether the findings of fact are supported by the evidence[,] (2) [w]hether the conclusions of law are supported by the findings of facts[, and] (3) [w]hether the order or judgment is consistent with the conclusions of law and applicable law." N.C. Gen. Stat. § 1-301.3(d) (2019). This Court applies the same standard of review as the superior court. *In re Williams*, 208 N.C. App. 148, 151, 701 S.E.2d 399, 401 (2010); *In re Estate of Pate*, 119 N.C. App. 400, 403, 459 S.E.2d 1, 2-3 (1995). The determination of a party's entitlement to an elective share, as a decision that "require[s] the exercise of judgment" and "the application of legal principles," *In re Estate of Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997), is a conclusion of law. The interpretation of a contract is also a conclusion of law. *In re Estate of Sharpe*, 258 N.C. App. 601, 605, 814 S.E.2d 595, 598 (2018). We review conclusions of law de novo. *In re Estate of Johnson*, 824 S.E.2d 857, 861 (N.C. Ct. App. 2019).

By default, "[t]he surviving spouse of a decedent who dies domiciled in this State has a right to claim an 'elective share'" in the decedent's estate. N.C. Gen. Stat. § 30-3.1(a) (2019). This statutory right "may be waived, wholly or partially, before or after marriage, with or without consideration, by a written waiver signed by the surviving spouse . . . ." N.C. Gen. Stat. § 30-3.6(a) (2019).

"The statutory law of this state permits a married couple to execute a separation agreement 'not inconsistent with public policy which shall be legal, valid, and binding in all respects.'" *Sedberry v. Johnson*, 62 N.C. App. 425, 429, 302 S.E.2d 924, 927 (1983) (quoting N.C. Gen. Stat. § 52-10.1). Such agreements are construed according to "the same rules which govern the interpretation of contracts generally." *Lane v. Scarborough*, 284 N.C. 407, 409, 200 S.E.2d 622, 624 (1973). As with contracts more broadly, in interpreting a marital agreement, "the primary purpose is to ascertain the intention of the parties at the moment of its execution." *Id.* at 409-10, 200 S.E.2d at 624. A contract "encompasses not only its express provisions but also all such implied provisions as are necessary to effect the intention of the parties unless express terms prevent such inclusion." *Id.* at 410, 200 S.E.2d at 624-25 (citing 4 Williston, Contracts § 601B (3d ed. 1961)). "The court will be prepared to imply a term if there arises from the language of the contract itself, and the circumstances under which it is entered into, an inference that the parties must have intended [the] stipulation in question." *Id.* at 410, 200 S.E.2d at 624-25 (quoting 1 Chitty, Contracts § 693 (23d ed. A.G. Guest 1968)).

In *Lane*, our Supreme Court concluded that a separation agreement, which had no specific express release of the wife's right to intestate succession, waived the wife's right to share in her deceased husband's estate. In analyzing the separation agreement, the Supreme Court recognized express terms therein, such as "[t]hey

agreed . . . they would live wholly separate and apart from each other as though they had never been married"; "[wife] agreed to make no demands upon [husband] for support and to impose no obligation or responsibility upon him"; and that "[e]ach agreed that the other would thereafter hold, acquire, and dispose of all classes and kinds of property, both real and personal, as though free and unmarried." *Id.* at 411, 200 S.E.2d at 625 (quotation marks and emphasis omitted). The Court also noted that the separation agreement stated that each party "released the right to administer upon the estate of the other." *Id.*

The Court determined that "the specific terms of the contract are totally inconsistent with an intention that the parties would each retain the right to share in the estate of the other . . . if he or she were to become the surviving spouse." *Id.* at 411, 200 S.E.2d at 625. The Court ultimately concluded: "The provisions that each would thereafter acquire, hold, and dispose of property as though unmarried and that each renounced the right to administer upon the estate of the other refute the contention that [the wife] intended to retain any rights in her husband's estate." *Id.*

Guided by *Lane*, this Court in *Sharpe* concluded that a pre-marital agreement waived the wife's right to claim an elective share in her deceased husband's estate.

> [T]he unambiguous language of the uncontested and valid pre-marital agreement plainly establishes the parties intention, prior to their marriage, that [wife] waived any rights in [husband's] separate property and that [husband] waived any rights in [wife's] separate property. The pre-marital agreement also clearly and unambiguously states

> "[e]ach party has the sole and exclusive right at all times to manage and control their respective separate property to the same extent as if each were unmarried[,]" and "[e]ach party specifically waives, relinquishes, renounces, and gives up any claim that he or she may have or otherwise had or may have made to the other's separate property under the laws of this state."

*Sharpe*, 258 N.C. App. at 608, 814 S.E.2d at 600. This Court reasoned that "[t]he only logical reading of 'each party specifically waives . . . any claim . . . to the other's separate property under the laws of this state, would extend, in light of the entire agreement, to include a spouse's right to claim an elective share under N.C. Gen. Stat. § 30-3.1." *Id.* at 608, 814 S.E.2d at 600 (quotation marks omitted).

Here, the MSA clearly and unambiguously states, "[e]ach party hereby transfers, assigns and relinquishes unto the other party any and all right, title or interest he or she may have in the furnishings and personal property presently in the possession of the other party, except as otherwise designated herein"; "[e]ach party hereby acknowledges sole ownership in the other party of all his or her wearing apparel, personal ornaments and other personal effects"; Petitioner shall have as her "sole and separate property" a car, and certain bank and financial accounts; Decedent shall have as his "sole and separate property" a car, and certain bank and financial accounts; "[h]ereafter, neither party shall make any claim against the other for any intangible personal property in the name, possession or control of the other"; and "[b]y

her execution of this Agreement, [Petitioner] dismisses with prejudice any claim for post-separation support, alimony and attorneys fees associated with said claims."

As in *Lane* and *Sharpe*, "the specific terms of the [MSA] are totally inconsistent with an intention that the parties would each retain the right to share in the estate of the other . . . if he or she were to become the surviving spouse." *Lane*, 284 N.C. at 411, 200 S.E.2d at 625. The MSA resolved all financial claims between the parties by exhaustively identifying the particular property that each spouse would hold as his or her "sole and separate property." *See id.* at 411, 200 S.E.2d at 625 (spouses divided the household furnishings which they jointly owned); *Sharpe*, 258 N.C. App. at 609, 814 S.E.2d at 600 (premarital agreement identified separate property of the spouses). The MSA also completely dismissed Petitioner's claims for post-separation support, alimony, and attorneys' fees. *See Lane*, 284 N.C. at 411, 200 S.E.2d at 625 (wife "agreed to make no demands upon [husband] for support and to impose no obligation or responsibility upon him"); *Sloop v. Sloop*, 24 N.C. App. 295, 297, 210 S.E.2d 262, 264 (1974) (finding waiver where, inter alia, wife waived "any and all right to alimony and support for herself"). Although the MSA does not expressly refer to the parties' rights to claim upon each other's estate, "the plain and unambiguous language does not permit us to read the agreement to mean the parties intended to waive rights to each other's separate property while they were alive, but not after one of them had pre-deceased the other." *Sharpe*, 258 N.C. App. at 610, 814 S.E.2d at

601.  *See also Sloop*, 24 N.C. App. at 298, 210 S.E.2d at 264 ("It seems inconceivable that either surviving party to this deed of separation could claim upon the death of the other that which manifestly he or she could not claim while both parties were living.").

Beyond the terms of the MSA, Petitioner contends that the reference in Decedent's Will to a Release of Estate and Inheritance Rights shows that the parties did not understand the MSA to include such a waiver.  We disagree.  "Evidence of statements and conduct by the parties after executing a contract is admissible to show intent and meaning of the parties."  *Heater v. Heater*, 53 N.C. App. 101, 104, 280 S.E.2d 19, 21 (1981).  But in this case, the terms that Decedent used in the Will do not effectively reveal anything about the intent or meaning of the parties beyond what can be gleaned from the MSA.  As the estate argues, the terms of the Will are equally susceptible to the interpretation that Decedent merely sought to make explicit in the Will what was already implicit in the MSA.

"[T]he intention of each party to release his or her share in the estate of the other is implicit in the express provisions of their separation agreement, their situation[,] and purpose at the time the instrument was executed."  *Lane*, 284 N.C. at 412, 200 S.E.2d at 625.  "The law will, therefore, imply the release and specifically enforce it."  *Id.* at 412, 200 S.E.2d at 625.  We hold that Petitioner released her right to share in Decedent's estate by the execution of the MSA.

### B. Petitioner's Testimony

Petitioner next argues that the trial court erred by finding that she had waived her elective share right without first hearing her testimony on the issue.

When a party appeals an estate matter to superior court, "[i]f the record is insufficient, the judge *may* receive additional evidence on the factual issue in question. The judge *may* continue the case if necessary to allow the parties time to prepare for a hearing to receive additional evidence." N.C. Gen. Stat. § 1-301.3(d) (emphasis added).

The permissive language of Section 1-301.3(d) grants the trial court discretion to receive additional evidence if it finds a deficiency in the record. "In instances involving permissive statutory language," the trial court's decision "is reviewed on appeal using an abuse of discretion standard of review." *In re Z.T.W.*, 238 N.C. App. 365, 370, 767 S.E.2d 660, 664 (2014). An abuse of discretion occurs only where the trial court's "actions are manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 777, 324 S.E.2d at 833.

Petitioner offered testimony to explain why there was no executed release attached to Decedent's Will, why the parties never obtained a divorce, and whether

the parties intended to leave the elective share right available. The superior court declined to hear this testimony. This did not amount to an abuse of discretion.

There is no indication in the record on appeal that the superior court found the record before it insufficient, and even if it had, it was within the court's discretion to accept additional evidence. N.C. Gen. Stat. § 1-301.3(d). Moreover, the superior court was permitted to make a reasoned decision on the issue of whether the elective share right was waived by reference to the language of the MSA and the Will alone. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 7, 802 S.E.2d 888, 892 (2017) (courts "determine the intent of the parties and the nature of an agreement 'by the plain meaning of the written terms'"); *Heater*, 53 N.C. App. at 104, 280 S.E.2d at 21 ("Evidence of statements and conduct by the parties after executing a contract is admissible to show intent and meaning of the parties."). That is what the superior court explicitly did; it relied on the language of the MSA and the Will to affirm the clerk's denial of Petitioner's claim to an elective share. The Superior Court therefore did not abuse its discretion by refusing to hear additional testimony from Petitioner.

### III. Conclusion

The terms of the MSA impliedly waived Petitioner's right to an elective share of Decedent's estate under N.C. Gen. Stat. § 30-3.1(a). The trial court was not required to hear Petitioner's testimony before making this determination. We therefore affirm the trial court's order.

AFFIRMED.

Judges INMAN and BERGER concur.